UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOCTOR'S ASSOCIATES INC.
          Plaintiff

vs.

QIP HOLDERS LLC,
          Defendant

CIVIL ACTION NO.:

OCTOBER 27, 2006

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## COUNT ONE: VIOLATION OF THE LANHAM ACT

### JURISDICTION AND VENUE

1. This is an action by Plaintiff Doctor's Associates Inc. against Defendant QIP Holders LLC for injunctive relief and damages arising out of the unfair and deceptive competitive practices of the Defendant in the commercial advertising of directly competing products, contrary to Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).

2. Jurisdiction is conferred on this Court pursuant to 15 U.S.C. Section 1125(a), 15 U.S.C. Section 1121, and by 28 U.S.C. Sections 1331 and 1338. Jurisdiction over Counts Two and Three is conferred on this Court pursuant to 28 U.S.C. Section 1332 and 1367.

3.      Venue is appropriate in this District by virtue of 28 U.S.C. Section 1391.

## THE PARTIES

4.      Plaintiff Doctor's Associates Inc. ("Subway") is a Florida corporation, having its world headquarters located at 325 Bic Drive, Milford, Connecticut 06460.  Plaintiff is the owner of the registered trademark Subway® and the franchisor of Subway® restaurants.   There are currently more than 25,000 Subway® restaurants world wide.

5.      Defendant QIP Holders LLC ("Quiznos") is a Delaware Limited Liability Company having a principal place of business located at 1475 Lawrence Street, Suite 400, Denver, Colorado  80202.  Defendant is the owner of the registered trademark Quiznos Sub and the franchisor of more than 5,000 Quiznos Sub sandwich shops

6.      The Plaintiff and the Defendant are direct competitors.

## STATEMENT OF THE CLAIM

7.      Plaintiff was formed in 1965 and its first Subway® franchise restaurant opened in Wallingford, Connecticut in 1974.

8.      Plaintiff sells through its franchise system a variety of sandwich style subs, including until recently a product known as the Subway® Cheesesteak

sandwich, which was offered through September, 2006. The Subway Cheesesteak sandwich consisted of shaved steak containing approximately 71 grams of beef with a recommended price of $3.59. The Plaintiff routinely discloses nutritional information associated with the Subway® products. It also offered an upgrade to the Cheesesteak sandwich of a double meat steak and cheese sandwich at a recommended price of $1.00 more for a 6-inch.

9. In September, 2006, the Defendant Quiznos introduced a product referred to as the Quiznos Prime Rib cheesesteak sandwich. The Defendant's larger (11") sandwich is sold at a price of $9.99, which is almost twice the price of the Subway sandwich. The Defendant has not released the nutritional facts about this product in the marketplace. Its marketing materials describe the product as "a double portion of tender prime rib, piled high with melted mozzarella cheese and sauteed onions," without indicating they are priced differently.

10. In or about September, 2006, the Defendant began running, and continues to run, a nationwide television advertisement campaign and nationally disseminated a 30- second commercial directly comparing the Defendant's new "Prime Rib Cheesesteak" to the Subway® Cheesesteak sandwich. The commercial also appears on the Defendant's website www.quiznos.com. The

commercial claims that the Defendant's product has 2x the meat, but the commercial does not say 2x more than what.

11. In this commercial advertisement, the Defendant identifies the Subway® Cheesesteak by name and depicts on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos." Thereafter several "men on the street" are filmed describing and directly comparing the two products that are on the tray. During the commercial, the Defendant depicts the Subway® Cheesesteak sandwich as having less meat than the Defendant's product. In one vignette a man is heard saying "meat, no meat." In another vignette two men are looking at the Subway® sandwich; one says, "I don't see any meat, oh there it is." The commercial also states that the Defendant's sandwich contains a "double portion" of prime rib.

12. In fact, the Defendant's Prime Rib sandwich is sold at a higher price than the Subway® product to which it is compared. There is no disclosure in the commercial of the price of the two products nor any comparison which discloses that the Defendant's product is priced higher.

13. Furthermore, there is no mention in the commercial that a consumer of the Subway® Cheesesteak can in fact upgrade the regular Subway® Cheesesteak sandwich to include a double portion of the meat.

14.   In addition, the commercial depicts a Subway® Cheesesteak sandwich that appears to be previously wrapped and compares it to the Defendant's sandwich which, upon information and belief, appears to have been specially prepared for the commercial filming.

15.   On August 4, 2006, Plaintiff advised its franchises that it would be offering two new steak sandwiches to replace the existing Cheesesteak sandwich, with a rollout of product between August 21 and September 24, 2006. On September 27, 2006, Plaintiff began advertising two new steak sandwiches, including a "Blackened Cajun Steak" and a "Steak & Cheese" replacing the old Cheesesteak sandwich. These steak sandwiches are made with seared, diced steak instead of the shaved steak used in the previous Cheesesteak sandwich. The basic Steak and Cheese sandwich includes steak, fire-roasted and grilled sweet bell peppers and onions, and cheese. Its recommended price for the 6-inch sandwich is $4.29 ($6.29 for a foot-long), and consumers may purchase a double portion of meat for a recommended price of an additional $1.00 for the 6-inch.

16.   Plaintiff began shipping the new product to restaurants during the week of September 11, 2006, and stopped shipping the shaved steak during that same week. Although franchisees were permitted to sell off their inventories of

shaved steak, at present virtually none of the Subway® restaurants have any inventory of the shaved steak. Accordingly, Defendant is continuing to run commercials comparing its new sandwich to a product no longer in the marketplace.

17. The Plaintiff objected to the Defendant's commercial advertisement and its false and misleading comparisons, informed Defendant that Plaintiff was discontinuing its Cheesesteak sandwich, and demanded that Defendant's commercial be pulled from the air and the Defendant's website. The Defendant has refused to remove the commercial or otherwise correct the advertisement.

18. The statements made in the Defendant's advertising are false and misleading in that, *inter alia*, (1) the Subway® Cheesesteak sandwich is not offered as the same product as that to which it is directly compared; (2) the Defendant did not disclose the differences in the two products and made no effort to compare and disclose the prices of the two products or the nutritional components of the two products being compared; (3) the Defendant claimed, directly and indirectly, that the Plaintiff's product has little or no meat in it; (4) the Defendant claimed, directly and indirectly, that its product is superior to Plaintiff's product when the two products are materially different; (5) the Defendant's commercial falsely depicts the appearance of the products; (6) the Defendant

explicitly or implicitly claimed the Defendant's product is superior to the Plaintiff's product although they are different in size and price, and (7) the Defendant compares its product to a product no longer offered for sale.

19. The Defendant's false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwich, and not the Subway® sandwich, based upon those representations and advertising.

20. Defendant has, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq*.

21. Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

22. Since Defendant began airing its comparison commercial sales at Subway® restaurants have measurably declined. The Plaintiff has sustained damages as a result of the Defendants wrongful conduct.

## COUNT TWO

1. Paragraph 1 through 20 of Count One are incorporated hereto and made Paragraphs 1 through 20 of Count Two.

21. Defendant has undertaken unfair methods of competition and unfair or deceptive acts and practices in violation of Conn. Gen. Stat. §42-110b *et seq.* with respect to its advertising.

22. Defendant's unfair methods of competition and unfair or deceptive acts and practices were willful and malicious and/or were performed by defendant with reckless disregard.

23. Unless the Defendant's unfair methods of competition are enjoined the Plaintiff will suffer substantial and irreparable harm in that it will lose sales of these and other products, its reputation in the industry will be damaged and impaired and the Plaintiff's profitability will be severed impaired.

24. Plaintiff has no adequate remedy at law with respect to the Defendant's unfair methods of competition and unfair and deceptive acts and practices.

25. As a further result of Defendant's conduct, the Plaintiff has sustained damages.

**COUNT THREE:  Commercial Disparagement**

1. Paragraph 1 through 19 of Count One are incorporated hereto and made Paragraphs 1 through 19 of Count Three.

20. The Defendant's false statements and communications made in its commercials and advertisements about the Plaintiff's Cheesesteak sandwich to the public were reasonably understood to impugn the quality and performance of Plaintiff's product by asserting that the "on the street" favorable comparison show the superiority of Defendant's product to Plaintiff's product.

21. The Defendant's advertising comparing its sandwich to the Plaintiff's sandwich are false or misleading. The Defendant intended and explicitly recognized or implicitly should have recognized, that these false or misleading statements would harm the Plaintiff's pecuniary interests.

22. The Defendant's advertising is not privileged.

23. Unless Defendant is enjoined from continued publication, the Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

24. As a direct and proximate result of this advertising Plaintiff has sustained damages.

WHEREFORE, the Plaintiff seeks:

AS TO COUNT ONE:

1. Preliminary and permanent injunctive relief;
2. Money damages;
3. Attorney's fees;
4. Such other and further relief as the Court deems just and proper;

AS TO COUNT TWO:

1. Preliminary and permanent injunctive relief;
2. Money damages;
3. Punitive damages;
4. Attorney's fees;
5. Such other and further relief as the Court deems just and proper;

AS TO COUNT THREE:

1. Preliminary and permanent injunctive relief;
2. Money damages;
3. Punitive damages;
4. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues properly tried before a jury.

THE PLAINTIFF

DOCTOR'S ASSOCIATES INC.

By _____
Jeffrey J. Mirman, Esq. (ct05433)
Lisa A. Zaccardelli, Esq. (ct07983)
LEVY & DRONEY, P.C.
74 Batterson Park Road
P.O. Box 887
Farmington, CT  06034-0887
(860) 676-3000
Its Attorneys