**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

_____
                                                    :
DOCTOR'S ASSOCIATES INC.                 :
                             Plaintiff        :        CIVIL ACTION NO.:
vs.                                                :        3:06cv01710 (VLB)
                                                    :
QIP HOLDERS LLC AND IFILM           :
                             Defendant     :        FEBRUARY 4, 2008
_____ :

**SEVENTH AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

**COUNT ONE:  VIOLATION OF THE LANHAM ACT**

JURISDICTION AND VENUE

1.      This is an action by Plaintiff Doctor's Associates Inc. against

Defendant QIP Holders LLC for injunctive relief and damages arising out of the

unfair and deceptive competitive practices of the Defendant in the commercial

advertising of directly competing products, contrary to Section 43(a) of the Lanham

Act, 15 U.S.C. Section 1125(a).

2.      Jurisdiction is conferred on this Court pursuant to 15 U.S.C. Section

1125(a), 15 U.S.C. Section 1121, and by 28 U.S.C. Sections 1331 and 1338.

Jurisdiction over Counts Two and Three is conferred on this Court pursuant to 28 U.S.C. Section 1332 and 1367.

3.     Venue is appropriate in this District by virtue of 28 U.S.C. Section 1391.

<u>THE PARTIES</u>

4.     Plaintiff Doctor's Associates Inc. ("Subway") is a Florida corporation, having its world headquarters located at 325 Bic Drive, Milford, Connecticut 06460.  Plaintiff is the owner of the registered trademark Subway® and the franchisor of Subway® restaurants.   There are currently more than 25,000 Subway® restaurants world wide.

5.     Defendant QIP Holders LLC ("Quiznos") is a Delaware Limited Liability Company having a principal place of business located at 1475 Lawrence Street, Suite 400, Denver, Colorado   80202.  Defendant is the owner of the registered trademark Quiznos Sub and the franchisor of more than 5,000 Quiznos Sub sandwich shops

6.     The Plaintiff and the Defendant Quiznos are direct competitors.

7.     The Defendant IFilm, Inc. is a corporation organized and existing in the State of California with a principle place of business located at 1024 North Orange Drive, Hollywood, California.

2

STATEMENT OF THE CLAIM

8.      Plaintiff was formed in 1965 and its first Subway® franchise restaurant opened in Wallingford, Connecticut in 1974.

9.      Plaintiff sells through its franchise system a variety of sandwich style subs, including until recently a product known as the Subway® Cheesesteak sandwich, which was offered through September, 2006.   The Subway Cheesesteak sandwich consisted of shaved steak containing approximately 71 grams of beef with a recommended price of $3.59.  The Plaintiff routinely discloses nutritional information associated with the Subway® products.   It also offered an upgrade to the Cheesesteak sandwich of a double meat steak and cheese sandwich at a recommended price of $1.00 more for a 6-inch.

10.     In September, 2006, the Defendant Quiznos introduced a product referred to as the Quiznos Prime Rib cheesesteak sandwich.   The Defendant Quiznos' larger (11") sandwich sold at a price of $9.99, which is almost twice the price of the Subway sandwich.    The Defendant Quiznos has not released the nutritional facts about this product in the marketplace.   Its marketing materials describe the product as "a double portion of tender prime rib, piled high with melted mozzarella cheese and sauteed onions," without indicating the Quiznos and Subway products are priced differently.

11.     In or about September, 2006, the Defendant Quiznos began running, and continued to run until November 3, 2006, a nationwide television advertisement campaign and nationally disseminated a 30- second commercial directly comparing the Defendant's new "Prime Rib Cheesesteak" to the Subway® Cheesesteak sandwich.  The commercial also appeared on the Defendant Quiznos' website www.quiznos.com.   The commercial claimed that the Defendant's product has 2x the meat, but the commercial did not say 2x more than what.

12.     In this commercial advertisement, the Defendant Quiznos identifies the Subway® Cheesesteak by name and depicts on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos."    Thereafter several "men on the street" are filmed describing and directly comparing the two products that are on the tray.  During the commercial, the Defendant Quiznos depicts the Subway® Cheesesteak sandwich as having less meat than the Defendant's product.   In one vignette a man is heard saying "meat, no meat."   In another vignette two men are looking at the Subway® sandwich; one says, "I don't see any meat, oh there it is." The commercial also states that the Defendant's sandwich contains a "double portion" of prime rib.

13.    In fact, the Defendant Quiznos' Prime Rib sandwich sold at a higher price than the Subway® product to which it is compared.  There is no disclosure in the commercial of the price of the two products nor any comparison which discloses that the Defendant Quiznos' product is priced higher.

14.    Furthermore, there is no mention in the commercial that a consumer of the Subway® Cheesesteak can in fact upgrade the regular Subway® Cheesesteak sandwich to include a double portion of the meat.

15.    In addition, the commercial depicts a Subway® Cheesesteak sandwich that appears to be previously wrapped and compares it to the Defendant's sandwich which, upon information and belief, appears to have been specially prepared for the commercial filming.

16.    On August 4, 2006, Plaintiff advised its franchises that it would be offering two new steak sandwiches to replace the existing Cheesesteak sandwich, with a rollout of product between August 21 and September 24, 2006.  On September 27, 2006, Plaintiff began advertising two new steak sandwiches, including a "Blackened Cajun Steak" and a "Steak & Cheese," replacing the old Cheesesteak sandwich.   These steak sandwiches are made with seared, diced steak instead of the shaved steak used in the previous Cheesesteak sandwich. The basic Steak and Cheese sandwich includes steak, fire-roasted and grilled

sweet bell peppers and onions, and cheese.   Its recommended price for the 6-inch sandwich is $4.29 ($6.29 for a foot-long), and consumers may purchase a double portion of meat for a recommended price of an additional $1.00 for the 6-inch.

17.    Plaintiff began shipping the new product to restaurants during the week of September 11, 2006, and stopped shipping the shaved steak during that same week.   Although franchisees were permitted to sell off their inventories of shaved steak, virtually none of the Subway® restaurants had any inventory of the shaved steak during the time period that the Quiznos commercial ran. Accordingly, Defendant is continuing to run commercials comparing its new sandwich to a product no longer in the marketplace.

18.    The Plaintiff objected to the Defendant's commercial advertisement and its false and misleading comparisons, informed Defendant that Plaintiff was discontinuing its Cheesesteak sandwich, and demanded that Defendant's commercial be pulled from the air and the Defendant's website.   The Defendant refused to remove the commercial or otherwise correct the advertisement.

19.    The statements made in the Defendant's advertising are false and misleading in that, *inter alia*, (1)  the Subway® Cheesesteak sandwich is not offered as the same product as that to which it is directly compared; (2) the

Defendant did not disclose the differences in the two products and made no effort to compare and disclose the prices of the two products or the nutritional components of the two products being compared; (3) the Defendant claimed, directly and indirectly, that the Plaintiff's product has little or no meat in it; (4) the Defendant claimed, directly and indirectly, that its product is superior to Plaintiff's product when the two products are materially different; (5) the Defendant's commercial falsely depicts the appearance of the products; (6) the Defendant explicitly or implicitly claimed the Defendant's product is superior to the Plaintiff's product although they are different in size and price, and (7) the Defendant compares its product to a product no longer offered for sale.

20.     The Defendant Quiznos' false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwich, and not the Subway® sandwich, based upon those representations and advertising.

21.     Defendant Quiznos has, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq.*

22.     Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

23.    Since Defendant Quiznos began airing its comparison commercial sales at Subway® restaurants have measurably declined.   The Plaintiff has sustained damages as a result of the Defendants wrongful conduct.

**COUNT TWO:  Connecticut Unfair Trade Practices Act**

1.    Paragraph 1 through 23 of Count One are incorporated hereto and made Paragraphs 1 through 23 of Count Two.

24.    Defendant has undertaken unfair methods of competition and unfair or deceptive acts and practices in violation of Conn. Gen. Stat. §42-110b *et seq.* with respect to its advertising.

25.    Defendant's unfair methods of competition and unfair or deceptive acts and practices were willful and malicious and/or were performed by defendant with reckless disregard.

26.    Unless the Defendant's unfair methods of competition are enjoined the Plaintiff will suffer substantial and irreparable harm in that it will lose sales of these and other products, its reputation in the industry will be damaged and impaired and the Plaintiff's profitability will be severed impaired.

27.    Plaintiff has no adequate remedy at law with respect to the Defendant's unfair methods of competition and unfair and deceptive acts and practices.

28.    As a further result of Defendant's conduct, the Plaintiff has sustained damages.

**COUNT THREE:  COMMERCIAL DISPARAGEMENT**

1.    Paragraph 1 through 27 of Count One are incorporated hereto and made Paragraphs 1 through 27 of Count Three.

28.    The Defendant's false statements and communications made in its commercials and advertisements about the Plaintiff's Cheesesteak sandwich to the public were reasonably understood to impugn the quality and performance of Plaintiff's product by asserting that the "on the street" favorable comparison  show the superiority of Defendant's product to Plaintiff's product.

29.    The Defendant's advertising comparing its sandwich to the Plaintiff's sandwich are false or misleading.  The Defendant intended and explicitly recognized or implicitly should have recognized, that these false or misleading statements would harm the Plaintiff's pecuniary interests.

30.    The Defendant's advertising is not privileged.

31.    Unless Defendant is enjoined from continued publication, the Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

32.    As a direct and proximate result of this advertising Plaintiff has sustained damages.

## COUNT FOUR:  VIOLATION OF THE LANHAM ACT

1.     Paragraph 1 through 27 of Count One are incorporated hereto and made Paragraphs 1 through 27 of Count Four.

28.     On or about October 31, 2006, the Defendants as co-sponsors, began running and continued to run through December 8, 2006, a nationwide contest entitled "Quiznos v. Subway TV Ad Challenge" ("the Contest") in which Defendants specifically sought out entries directly comparing the Subway® sandwich to the Quiznos Prime Rib Cheesesteak sandwich.  In the Contest rules, entrants were told to log onto "MeatNoMeat.com" and submit entries based upon a creative comparison between Quiznos and Subway® with Quiznos being superior.

29.     The Contest Rules provided, *inter alia*, as follows:

- "all materials submitted become the property of sponsors and will not be returned;"

- "sponsors may use any ideas, concepts, materials, or expression in whole or in part, contained in a video submission;"

- "entrants consent to Sponsors exhibiting such video submission, or any portion or derivation thereof, in all media with no territory or time restrictions."

In addition, the Contest Rules permit Defendants to use the "video submissions in whole or in part for any purpose whatsoever without any compensation." Furthermore, the Defendants have

the non-exclusive, irrevocable right and license to exhibit, broadcast, copy, reproduce, encode, compress, encrypt, incorporate data into, edit, broadcast, rebroadcast, transmit, record, publicly perform, create derivative works of, and distribute and synchronize in timed relation to visual elements, the materials contained in their Video Submissions and/or any portions, excerpts or derivatives thereof, in any manner, an unlimited number of times, in any and all media, now known or hereafter devised, throughout the world, in perpetuity, including, without limitation, in media partners' wireless and broadband video applications, in-store television networks, cinema advertising, at live events, on websites in addition to the Websites, in VH1's Web Junk online/television show and in connection with any other advertising, promotional, marketing or public relations activity of Quiznos.

30.    The Defendants thereafter posted at least three separate videos created by or for Defendants entitled "Mr. Meat" "Disgruntled Employee", and "Breaks You Get What You Pay For."   In each of these commercials the Defendants explicitly or implicitly referred to the Subway® sandwiches in a false and misleading manner.  The Defendants posted videos submitted under the contest to the iFilm website.   For example, in one video under the Contest, the video depicts a Subway Cheesesteak sandwich in front of the Subway outlet and then the sandwich is shown running to the Defendant's store implying there was "no meat" at the Subway store.  In another video entitled "Co-workers" two male individuals are shown sitting at lunch on a break with one individual eating a

Subway® Cheesesteak sandwich and the other employee eating the Defendant's steak sandwich; the video depicts the individual eating a Subway® sandwich with "no meat" and wanting to "trade" his Subway® half for the Defendant's sandwich. In a third example, two children are depicted in a submarine attack situation calling for help because of the enemy Subway ship is approaching without enough meat. The sandwich is then obliterated implying it did not have enough meat.   In each of these submissions to the Contest, videos implicitly or explicitly show the Subway® product in a false and misleading manner.

31.     On November 1, 2006, the Plaintiff objected to the Defendants' Contest promoting these advertisements and its false and misleading comparisons, and demanded the Defendants (1) immediately cease and desist from making false and misleading derogatory statements, and (2) remove from the Defendants' websites the commercials and advertisements.  While two commercials have been relocated, all of the commercials removed, as of the date of this Amended Complaint are still on-line and viewable, and the Defendants have refused to remove the commercials or otherwise correct the advertisement.

32.     The advertising statements encouraged and promoted by the Defendants are false and misleading in that, *inter alia*, (1) the contest advertises itself as a meat vs. no-meat comparison, thereby claiming directly and/or indirectly,

that the Plaintiff's product has little or no meat in it; (2) the Defendant Quiznos has claimed, directly and indirectly, that its product is superior to the Plaintiff's product when the two products are materially different; (3)  the Contest solicited video entries and thereafter published these videos with "meat-no-meat" advertising explicitly or implicitly depicting the Subway product as having no meat in it; and (4) the Defendant Quiznos continued to compare its product to a product which Plaintiff no longer advertises and offers for sale.

33.    Thereafter, and continuing through December 8, 2006, videos were submitted and posted on iFilm.com which compared Quiznos to Subway®.  A number of these videos contain literally false statements of images about Subway®.   Others depict Subway® in a disparaging manner.   Although Plaintiff indicated its objection to these videos they remained on the iFilm website for a significant period of time following the end of the contest and the selection of the winner.

34.    The Contest Rules, the promotion of the contest on the Quiznos meatnomeat.com and iFilm websites, and the use of the videos were all part of an organized campaign to penetrate the market in which Quiznos and Subway® compete.

35.     The Defendants' false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwiches, and not the Subway® sandwiches, based upon those representations and advertising.

36.     Defendants have, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq.*

37.     Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

38.     The Plaintiff has sustained damages as a result of the Defendants' wrongful conduct.

## COUNT FIVE:  VIOLATION OF THE LANHAM ACT

1.     Paragraph 1 through 23 of Count One are incorporated hereto and made Paragraphs 1 through 23 of Count Five.

24.     In or about January 14, 2007, the Defendant Quiznos began running, and continues to run, a nationwide television advertisement campaign and nationally disseminated a 30-second commercial directly comparing the Defendant's new "Ultimate Italian" sandwich to the Subway® Italian BMT® sandwich.  The commercial also appeared on the Defendant Quiznos' website www.quiznos.com.

25.     In this commercial advertisement, the Defendant Quiznos identified the Subway® Italian BMT® by name and depicted on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos."   The sandwiches were filmed on an angle.   Thereafter several "men on the street" were filmed describing and directly comparing the two products that are on the tray.  During the commercial, the Defendant Quiznos depicted the Subway® Italian BMT® sandwich as having less meat than the Defendant's product.   In one vignette a man is heard saying "If I ran out of gas in front of a Subway I would walk ten miles to get the Quiznos sandwich."   In another vignette two men are looking at the Subway® sandwich; one says, "I don't see any meat."   The commercial also stated that the Defendant's sandwich contains a "double portion" of meat.   The commercial also states that the Quiznos Ultimate Italian sandwich has 2x the meat, but does not state of what it is 2x the meat.

26.     In fact, the Defendant Quiznos' Ultimate Italian sandwich is sold at a higher price than the Subway® product to which it was compared.  There was no disclosure in the commercial of the price of the two products nor any comparison which discloses that the Defendant Quiznos' product is priced higher.

27.     Furthermore, there was no mention in the commercial that a consumer of the Subway® Italian BMT® can in fact upgrade the regular Subway®

Italian BMT sandwich to include a double portion of the meat.  The commercial also failed to disclose that Quiznos offers a "Classic Italian" sandwich with less meat than the Ultimate Italian sandwich, and which more closely compares to the Subway® Italian BMT® sandwich.

28.    In addition, the commercial depicted a Subway® Italian BMT® sandwich that appeared to be previously wrapped and compared it to the Defendant's sandwich which, upon information and belief, appeared to have been specially prepared for the commercial filming.   In viewing the Quiznos website information and its menu, it states that the new Ultimate Italian sandwich has a double portion of the meat.

29.    The Plaintiff objected to the Defendant's commercial advertisement and its false and misleading comparisons, and demanded the commercial be pulled from the air and the Defendant's website.   The Defendant refused to remove the commercial or otherwise correct the advertisement.

30.    The statements made in the Defendant's advertising are false and misleading in that, *inter alia*, (1)  the Subway® Italian BMT® sandwich is not offered as the same product as that to which it is directly compared; (2) the Defendant did not disclose the differences in the two products and made no effort to compare and disclose the prices of the two products or the nutritional

16

components of the two products being compared; (3) the Defendant claimed, directly and indirectly, that the Plaintiff's product has little or no meat in it; (4) the Defendant claimed, directly and indirectly, that its product is superior to Plaintiff's product when the two products are materially different; (5) the Defendant's commercial falsely depicts the appearance of the products; (6) the Defendant explicitly or implicitly claimed the Defendant's product is superior to the Plaintiff's product although they are different in size and price; (7) the Defendant has claimed the product contains 2x the meat, but Defendant has not specified of what the product contains 2x the meat.

31.     The Defendant Quiznos' false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwich, and not the Subway® sandwich, based upon those representations and advertising.

32.     Defendant Quiznos has, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq.*

33.     Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

34.     Since Defendant Quiznos began airing its comparison commercial sales at Subway® restaurants have measurably declined.   The Plaintiff has sustained damages as a result of the Defendants wrongful conduct.

**COUNT  SIX:  Connecticut Unfair Trade Practices Act**

1.     Paragraph 1 through 31 of Count Five are incorporated hereto and made Paragraphs 1 through 31 of Count Six.

32.     Defendant has undertaken unfair methods of competition and unfair or deceptive acts and practices in violation of Conn. Gen. Stat. §42-110b *et seq.* with respect to its advertising of its new Ultimate Italian sandwich.

33.     Defendant's unfair methods of competition and unfair or deceptive acts and practices were willful and malicious and/or were performed by defendant with reckless disregard.

34.     Unless the Defendant's unfair methods of competition are enjoined the Plaintiff will suffer substantial and irreparable harm in that it will lose sales of these and other products, its reputation in the industry will be damaged and impaired and the Plaintiff's profitability will be severed impaired.

35.     Plaintiff has no adequate remedy at law with respect to the Defendant's unfair methods of competition and unfair and deceptive acts and practices.

36.     As a further result of Defendant's conduct, the Plaintiff has sustained damages.

**COUNT SEVEN:  COMMERCIAL DISPARAGEMENT**

1.     Paragraph 1 through 31 of Count Five are incorporated hereto and made Paragraphs 1 through 31 of Count Seven.

32.     The Defendant's false statements and communications made in its commercials and advertisements about the Plaintiff's Italian BMT sandwich to the public were reasonably understood to impugn the quality and performance of Plaintiff's product by asserting that the "on the street" favorable comparison  show the superiority of Defendant's product to Plaintiff's product.

33.     The Defendant's advertising comparing its sandwich to the Plaintiff's sandwich are false or misleading.  The Defendant intended and explicitly recognized or implicitly should have recognized, that these false or misleading statements would harm the Plaintiff's pecuniary interests.

34.     The Defendant's advertising is not privileged.

35.     Unless Defendant is enjoined from continued publication, the Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

36.     As a direct and proximate result of this advertising Plaintiff has sustained damages.

WHEREFORE, the Plaintiff seeks:

AS TO COUNT ONE:

      1.     Preliminary and permanent injunctive relief;

      2.     Money damages pursuant to 15 USC § 1117 et seq;

      3.     Attorney's fees and costs pursuant to 15 USC § 1117 et seq;

      4.     Such other and further relief pursuant to 15 USC § 1117 et seq or otherwise as the Court deems just and proper.

AS TO COUNT TWO:

      1.     Preliminary and permanent injunctive relief;

      2.     Money damages;

      3.     Punitive damages pursuant to C.G.S. §42-110a et seq;

      4.     Attorney's fees and costs pursuant to C.G.S. §42-110a et seq;

      5.     Such other and further relief as the Court deems just and proper.

AS TO COUNT THREE:

      1.     Preliminary and permanent injunctive relief;

      2.     Money damages;

      3.     Punitive damages;

      4.     Such other and further relief as the Court deems just and proper.

AS TO COUNT FOUR:

     1.     Preliminary and permanent injunctive relief;

     2.     Money damages pursuant to 15 USC § 1117 et seq;

     3.     Attorney's fees and costs pursuant to 15 USC § 1117 et seq;

     4.     Such other and further relief pursuant to 15 USC § 1117 et seq or otherwise as the Court deems just and proper.

AS TO COUNT FIVE:

     1.     A Temporary Restraining Order, Preliminary and permanent injunctive relief;

     2.     Money damages pursuant to 15 USC § 1117 et seq;

     3.     Attorney's fees and costs pursuant to 15 USC § 1117 et seq;

     4.     Such other and further relief pursuant to 15 USC § 1117 et seq or otherwise as the Court deems just and proper.

AS TO COUNT SIX:

     1.     Preliminary and permanent injunctive relief;

     2.     Money damages;

     3.     Punitive damages pursuant to C.G.S. §42-110a et seq;

     4.     Attorney's fees and costs pursuant to C.G.S. §42-110a et seq;

     5.     Such other and further relief as the Court deems just and proper.

AS TO COUNT SEVEN:

    1.      Preliminary and permanent injunctive relief;

    2.      Money damages;

    3.      Punitive damages;

    4.      Such other and further relief as the Court deems just and proper.


<u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues properly tried before a jury.


THE PLAINTIFF
DOCTOR'S ASSOCIATES INC.


By _____/ss/_____
        Jeffrey J. Mirman, Esq. (ct05433)
        Lisa A. Zaccardelli, Esq. (ct07983)
        LEVY & DRONEY, P.C.
        74 Batterson Park Road
        P.O. Box 887
        Farmington, CT   06034-0887
        (860) 676-3000
        Its Attorneys

**CERTIFICATION OF SERVICE**

I hereby certify that on February 4, 2008, a copy of the foregoing Seventh Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Ronald Y. Rothstein, Esq.
Marlon E. Lutfiyya, Esq.
WINSTON & STRAWN, LLP
35 West Wacker Drive, 41st FL
Chicago, ILL  60601

James C. Riley, Esq.
WHITMAN, BREED, ABBOTT & MORGAN
100 Field Point Road
Greenwich, CT  06836

_____/ss/_____
Jeffrey J. Mirman, Esq. (ct05433)
Lisa A. Zaccardelli, Esq. (ct07983)
Levy & Droney, P.C.
74 Batterson Park Road
Post Office Box 887
Farmington, CT 06032-0887
(860) 676-3065
(860) 676-3200 (fax)
email:  jmirman@ldlaw.com
email:  lzaccard@ldlaw.com