UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) | 3:06-cv-01710 (VLB) |
| | ) | |
| QIP HOLDER LLC and | ) | |
| IFILM CORP., | ) | |
| | ) | **Jury Trial Demanded** |
| Defendants. | ) | |
| | ) | |

## DEFENDANT QIP HOLDER LLC'S ANSWER TO PLAINTIFF'S SEVENTH AMENDED COMPLAINT

Defendant QIP Holder LLC ("Quiznos"), by and through its attorneys, answers Plaintiff's Seventh Amended Complaint (the "Complaint") as follows:

## COUNT ONE:  VIOLATION OF THE LANHAM ACT

### JURISDICTION AND VENUE

1.     This is an action by Plaintiff Doctor's Associates Inc. against Defendant QIP Holders LLC for injunctive relief and damages arising out of the unfair and deceptive competitive practices of the Defendant in the commercial advertising of directly competing products, contrary to Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).

**ANSWER:**   Quiznos admits that Plaintiff's Complaint purports to state an action as described in Paragraph 1.  Quiznos otherwise denies the allegations in Paragraph 1.

2.     Jurisdiction is conferred on this Court pursuant to 15 U.S.C. Section 1125(a), 15 U.S.C. Section 1121, and by 28 U.S.C. Sections 1331 and 1338.  Jurisdiction over Counts Two and Three is conferred on this Court pursuant to 28 U.S.C. Section 1332 and 1367.

**ANSWER:**   Quiznos admits that this Court has jurisdiction over Plaintiff's federal Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and that the Court has jurisdiction over Counts Two and Three of the Complaint pursuant to 28 U.S.C. §§ 1332 and 1367.  Quiznos denies the remaining allegations in Paragraph 2.

1

3. Venue is appropriate in this District by virtue of 28 U.S.C. Section 1391.

**ANSWER:** Quiznos admits the allegation in Paragraph 3.

## THE PARTIES

4. Plaintiff Doctor's Associates Inc. ("Subway") is a Florida corporation, having its world headquarters located at 325 Bic Drive, Milford, Connecticut 06460. Plaintiff is the owner of the registered trademark Subway® and the franchisor of Subway® restaurants. There are currently more than 25,000 Subway® restaurants world wide.

**ANSWER:** Quiznos lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 4 and therefore denies those allegations.

5. Defendant QIP Holders LLC ("Quiznos") is a Delaware Limited Liability Company having a principal place of business located at 1475 Lawrence Street, Suite 400, Denver, Colorado 80202. Defendant is the owner of the registered trademark Quiznos Sub and the franchisor of more than 5,000 Quiznos Sub sandwich shops

**ANSWER:** Quiznos denies that it is the franchisor of more than 5,000 Quiznos Sub sandwich shops. Quiznos admits the remaining allegations in Paragraph 5.

6. The Plaintiff and the Defendant Quiznos are direct competitors.

**ANSWER:** Quiznos admits the allegation in Paragraph 6.

7. The Defendant IFilm, Inc. is a corporation organized and existing in the State of California with a principle place of business located at 1024 North Orange Drive, Hollywood, California.

**ANSWER:** Quiznos lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 7 and therefore denies those allegations.

## STATEMENT OF THE CLAIM

8. Plaintiff was formed in 1965 and its first Subway® franchise restaurant opened in Wallingford, Connecticut in 1974.

**ANSWER:** Quiznos lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 8 and therefore denies those allegations.

9.      Plaintiff sells through its franchise system a variety of sandwich style subs, including until recently a product known as the Subway® Cheesesteak sandwich, which was offered through September, 2006. The Subway Cheesesteak sandwich consisted of shaved steak containing approximately 71 grams of beef with a recommended price of $3.59. The Plaintiff routinely discloses nutritional information associated with the Subway® products. It also offered an upgrade to the Cheesesteak sandwich of a double meat steak and cheese sandwich at a recommended price of $1.00 more for a 6-inch.

**ANSWER:**    Quiznos lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 9 and therefore denies those allegations.

10.     In September, 2006, the Defendant Quiznos introduced a product referred to as the Quiznos Prime Rib cheesesteak sandwich. The Defendant Quiznos larger (11") sandwich sold at a price of $9.99, which is almost twice the price of the Subway sandwich. The Defendant Quiznos has not released the nutritional facts about this product in the marketplace. Its marketing materials describe the product as "a double portion of tender prime rib, piled high with melted mozzarella cheese and sauteed onions," without indicating the Quiznos and Subway products are priced differently.

**ANSWER:**    Quiznos admits that in September 2006 it began offering to consumers a product known as the Quiznos Prime Rib Cheesesteak sandwich (the "Prime Rib sandwich"). Quiznos also admits that the sandwich is available in a "large" size measuring 11 inches in length and priced at $9.99. Quiznos further admits that a Quiznos press release describes the Prime Rib sandwich as having "a double portion of tender prime rib, piled high with melted mozzarella cheese and sautéed onions." Quiznos otherwise denies the remaining allegations in Paragraph 10.

11.     In or about September, 2006, the Defendant Quiznos began running, and continued to run until November 3, 2006, a nationwide television advertisement campaign and nationally disseminated a 30-second commercial directly comparing the Defendant's new "Prime Rib Cheesesteak" to the Subway® Cheesesteak sandwich. The commercial also appeared on the Defendant Quiznos' website www.quiznos.com. The commercial claimed that the Defendant's product has 2x the meat, but the commercial does not say 2x more than what.

**ANSWER:**    Quiznos admits that in September 2006 it launched a national television advertising campaign to promote the Prime Rib sandwich. Quiznos also admits that the campaign included a commercial depicting real consumers being asked to look at the Prime Rib

3

sandwich and the Subway Cheesesteak sandwich and decide which sandwich they would choose. Quiznos further admits that the commercial indicates that the Prime Rib sandwich has "2x the meat" of the Subway Cheesesteak sandwich. Quiznos otherwise denies the remaining allegations in Paragraph 11.

      12.    In this commercial advertisement, the Defendant Quiznos identifies the Subway® Cheesesteak by name and depicts on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos." Thereafter several "men on the street" are filmed describing and directly comparing the two products that are on the tray. During the commercial, the Defendant Quiznos depicts the Subway® Cheesesteak sandwich as having less meat than the Defendant's product. In one vignette a man is heard saying "meat, no meat." In another vignette two men are looking at the Subway® sandwich; one says, "I don't see any meat, oh there it is." The commercial also states that the Defendant's sandwich contains a "double portion" of prime rib.

      **ANSWER:**    Quiznos admits that the commercial advertisement referenced in Paragraph 12 identifies the Subway Cheesesteak sandwich by name and depicts on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos." Quiznos admits that the commercial advertisement depicts consumers comparing the two sandwiches. Quiznos further admits that the commercial depicts the Subway Cheesesteak sandwich as having less meat than the Prime Rib sandwich. Quiznos also admits that the commercial depicts a consumer uttering the statement "meat, no meat." Quiznos otherwise denies the remaining allegations in Paragraph 12.

      13.    In fact, the Defendant Quiznos' Prime Rib sandwich sold at a higher price than the Subway® product to which it is compared. There is no disclosure in the commercial of the price of the two products nor any comparison which discloses that the Defendant Quiznos' product is priced higher.

      **ANSWER:**    Quiznos admits that Quzinos' Prime Rib sandwich was sold at a higher price that the Subway product to which it was compared in the commercial advertisement referenced in Paragraph 13. Quiznos further admits that the commercial advertisement does not

4

mention the prices of the Prime Rib sandwich or the Subway sandwich to which it was compared. Quiznos otherwise denies the remaining allegations in Paragraph 13.

14. Furthermore, there is no mention in the commercial that a consumer of the Subway® Cheesesteak can in fact upgrade the regular Subway® Cheesesteak sandwich to include a double portion of the meat.

**ANSWER:** Quiznos admits that there was no mention in the commercial that a consumer of the Subway® Cheesesteak can upgrade the regular Subway® Cheesesteak to include a double portion of meat.

15. In addition, the commercial depicts a Subway® Cheesesteak sandwich that appears to be previously wrapped and compares it to the Defendant's sandwich which, upon information and belief, appears to have been specially prepared for the commercial filming.

**ANSWER:** Quiznos denies the allegations in Paragraph 15.

16. On August 4, 2006, Plaintiff advised its franchises that it would be offering two new steak sandwiches to replace the existing Cheesesteak sandwich, with a rollout of product between August 21 and September 24, 2006. On September 27, 2006, Plaintiff began advertising two new steak sandwiches, including a "Blackened Cajun Steak" and a "Steak & Cheese," replacing the old Cheesesteak sandwich. These steak sandwiches are made with seared, diced steak instead of the shaved steak used in the previous Cheesesteak sandwich. The basic Steak and Cheese sandwich includes steak, fire-roasted and grilled sweet bell peppers and onions, and cheese. Its recommended price for the 6-inch sandwich is $4.29 ($6.29 for a foot-long), and consumers may purchase a double portion of meat for a recommended price of an additional $1.00 for the 6-inch.

**ANSWER:** Quiznos denies the allegations in Paragraph 16.

17. Plaintiff began shipping the new product to restaurants during the week of September 11, 2006, and stopped shipping the shaved steak during that same week. Although franchisees were permitted to sell off their inventories of shaved steak, virtually none of the Subway® restaurants had any inventory of the shaved steak during the time period that the Quiznos commercial ran. Accordingly, Defendant is continuing to run commercials comparing its new sandwich to a product no longer in the marketplace.

**ANSWER:** Quiznos denies the allegations in Paragraph 17.

18. The Plaintiff objected to the Defendant's commercial advertisement and its false and misleading comparisons, informed Defendant that Plaintiff was discontinuing its Cheesesteak sandwich, and demanded that Defendant's commercial be pulled from the air and

the Defendant's website.  The Defendant refused to remove the commercial or otherwise correct the advertisement.

**ANSWER:**   Quiznos admits that it received a September 22, 2006 letter from counsel for Subway (i) informing it that Subway was discontinuing the Cheesesteak sandwich; (ii) demanding that Quiznos cease running the "Quiznos Prime Rib Cheesesteak TV Ad"; and (iii) demanding that Quiznos remove the aforementioned advertisement from its website.  Quiznos otherwise denies the remaining allegations in Paragraph 18.

19.   The statements made in the Defendant's advertising are false and misleading in that, *inter alia*, (1) the Subway® Cheesesteak sandwich is not offered as the same product as that to which it is directly compared; (2) the Defendant did not disclose the differences in the two products and made no effort to compare and disclose the prices of the two products or the nutritional components of the two products being compared; (3) the Defendant claimed, directly and indirectly, that the Plaintiff's product has little or no meat in it; (4) the Defendant claimed, directly and indirectly, that its product is superior to Plaintiff's product when the two products are materially different; (5) the Defendant's commercial falsely depicts the appearance of the products; (6) the Defendant explicitly or implicitly claimed the Defendant's product is superior to the Plaintiff's product although they are different in size and price, and (7) the Defendant compares its product to a product no longer offered for sale.

**ANSWER:**   Quiznos denies the allegations in Paragraph 19.

20.   The Defendant Quiznos' false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwich, and not the Subway® sandwich, based upon those representations and advertising.

**ANSWER:**   Quiznos denies the allegations in Paragraph 20.

21.   Defendant Quiznos has, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq*.

**ANSWER:**   Quiznos denies the allegations in Paragraph 21.

22.   Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

**ANSWER:**   Quiznos denies the allegations in Paragraph 22.

23.   Since Defendant Quiznos began airing its comparison commercial sales at Subway® restaurants have measurably declined.  The Plaintiff has sustained damages as a result of the Defendants wrongful conduct.

**ANSWER:** Quiznos lacks sufficient knowledge or information to admit or deny that sales at Subway® restaurants have measurably declined since Quiznos began airing the commercial referenced in Paragraph 23, and therefore denies that allegation. Quiznos also denies the remaining allegations in Paragraph 23.

## COUNT TWO: CONNECTICUT UNFAIR TRADE PRACTICES ACT

1. Paragraph 1 through 23 of Count One are incorporated hereto and made Paragraphs 1 through 23 of Count Two.

**ANSWER:** Quiznos incorporates by reference its answers to the allegations in Paragraphs 1 through 23 of Count One as if fully set forth herein.

24. Defendant has undertaken unfair methods of competition and unfair or deceptive acts and practices in violation of Conn. Gen. Stat. §42-110b *et seq*. with respect to its advertising.

**ANSWER:** Quiznos denies the allegations in Paragraph 24.

25. Defendant's unfair methods of competition and unfair or deceptive acts and practices were willful and malicious and/or were performed by defendant with reckless disregard.

**ANSWER:** Quiznos denies the allegations in Paragraph 25.

26. Unless the Defendant's unfair methods of competition are enjoined the Plaintiff will suffer substantial and irreparable harm in that it will lose sales of these and other products, its reputation in the industry will be damaged and impaired and the Plaintiff's profitability will be severed impaired.

**ANSWER:** Quiznos denies the allegations in Paragraph 26.

27. Plaintiff has no adequate remedy at law with respect to the Defendant's unfair methods of competition and unfair and deceptive acts and practices.

**ANSWER:** The allegation in Paragraph 27 purports to state a legal conclusion to which no response is required. To the extent a response is required, Quiznos denies the allegation in Paragraph 27.

28. As a further result of Defendant's conduct, the Plaintiff has sustained damages.

**ANSWER:** Quiznos denies the allegation in Paragraph 28.

## COUNT THREE: COMMERCIAL DISPARAGEMENT

1. Paragraph 1 through 27 of Count One are incorporated hereto and made Paragraphs 1 through 27 of Count Three.

**ANSWER:** Quiznos incorporates by reference its answers to the allegations in Paragraphs 1 through 27 of Count One as if fully set forth herein.

28. The Defendant's false statements and communications made in its commercials and advertisements about the Plaintiff's Cheesesteak sandwich to the public were reasonably understood to impugn the quality and performance of Plaintiff's product by asserting that the "on the street" favorable comparison show the superiority of Defendant's product to Plaintiff's product.

**ANSWER:** Quiznos denies the allegations in Paragraph 28.

29. The Defendant's advertising comparing its sandwich to the Plaintiff's sandwich are false or misleading. The Defendant intended and explicitly recognized or implicitly should have recognized, that these false or misleading statements would harm the Plaintiff's pecuniary interests.

**ANSWER:** Quiznos denies the allegations in Paragraph 29.

30. The Defendant's advertising is not privileged.

**ANSWER:** The allegation in Paragraph 30 purports to state a legal conclusion to which no response is required. To the extent a response is required, Quiznos denies the allegation in Paragraph 30.

31. Unless Defendant is enjoined from continued publication, the Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

**ANSWER:** Quiznos denies the allegation in Paragraph 31.

32. As a direct and proximate result of this advertising Plaintiff has sustained damages.

**ANSWER:** Quiznos denies the allegations in Paragraph 32.

8

**COUNT FOUR: VIOLATION OF THE LANHAM ACT**

1.      Paragraph 1 through 27 of Count One are incorporated hereto and made Paragraphs 1 through 27 of Count Four.

**ANSWER:** Quiznos incorporates by reference its answers to the allegations in Paragraphs 1 through 27 of Count One as if fully set forth herein.

28.     On or about October 31, 2006, the Defendants as co-sponsors, began running and continued to run through December 8, 2006, a nationwide contest entitled "Quiznos v. Subway TV Ad Challenge" ("the Contest") in which Defendants specifically sought out entries directly comparing the Subway® sandwich to the Quiznos Prime Rib Cheesesteak sandwich. In the Contest rules, entrants were told to log onto "MeatNoMeat.com" and submit entries based upon a creative comparison between Quiznos and Subway® with Quiznos being superior.

**ANSWER:** Quiznos admits that from October 31, 2006 to December 8, 2006 it ran, as a co-sponsor, a nationwide contest entitled "Quiznos vs. Subway TV Ad Challenge" (the "Contest"). Quiznos also admits that the Official Rules of the Contest state that contestants can log onto meatnomeat.com, ifilm.com or quiznos.com to submit contest entries. Quiznos otherwise denies the remaining allegations in Paragraph 28.

29.     The Contest Rules provided, *inter alia*, as follows:

- "all materials submitted become the property of sponsors and will not be returned;"
- "sponsors may use any ideas, concepts, materials, or expression in whole or in part, contained in a video submission;"
- "entrants consent to Sponsors exhibiting such video submission, or any portion or derivation thereof, in all media with no territory or time restrictions."

In addition, the Contest Rules permit Defendants to use the "video submissions in whole or in part for any purpose whatsoever without any compensation." Furthermore, the Defendants have

> the non-exclusive, irrevocable right and license to exhibit, broadcast, copy, reproduce, encode, compress, encrypt, incorporate data into, edit, broadcast, rebroadcast, transmit, record, publicly perform, create derivative works of, and distribute and synchronize in timed relation to visual elements, the materials contained in their Video Submissions and/or any portions, excerpts or derivatives thereof, in any manner, an unlimited number of times, in any and all media, now known or hereafter devised, throughout the world, in perpetuity, including,

9

without limitation, in media partners' wireless and broadband video applications, in-store television networks, cinema advertising, at live events, on websites in addition to the Websites, in VH1's Web Junk online/television show and in connection with any other advertising, promotional, marketing or public relations activity of Quiznos.

**ANSWER**   Quiznos admits that the Contest Rules contain the above-quoted statements in Paragraph 29.  Quiznos otherwise denies the remaining allegations in Paragraph 29.

30.   The Defendants thereafter posted at least three separate videos created by or for Defendants entitled "Mr. Meat" "Disgruntled Employee", and "Breaks You Get What You Pay For."  In each of these commercials the Defendants explicitly or implicitly referred to the Subway® sandwiches in a false and misleading manner.  The Defendants posted videos submitted under the contest to the iFilm website.  For example, in one video under the Contest, the video depicts a Subway Cheesesteak sandwich in front of the Subway outlet and then the sandwich is shown running to the Defendant's store implying there was "no meat" at the Subway store.  In another video entitled "Co-workers" two male individuals are shown sitting at lunch on a break with one individual eating a Subway® Cheesesteak sandwich and the other employee eating the Defendant's steak sandwich;  the video depicts the individual eating a Subway® sandwich with "no meat" and wanting to "trade" his Subway® half for the Defendant's sandwich.  In a third example, two children are depicted in a submarine attack situation calling for help because of the enemy Subway ship is approaching without enough meat.  The sandwich is then obliterated implying it did not have enough meat.  In each of these submissions to the Contest, videos implicitly or explicitly show the Subway® product in a false and misleading manner.

**ANSWER:**   Quiznos admits that videos entitled "Mr. Meat," "Disgruntled Employee" and "Breaks You Get What You Pay For" were posted on the Contest website.  Quiznos also admits that a contestant-submitted video in which a child exclaims that a Subway sandwich depicted as a submarine is sinking because it does not have "enough" meat was posted on the Contest website.  Quiznos otherwise denies the remaining allegations in Paragraph 30.

31.   On November 1, 2006, the Plaintiff objected to the Defendants' Contest promoting these advertisements and its false and misleading comparisons, and demanded the Defendants (1) immediately cease and desist from making false and misleading derogatory statements, and (2) remove from the Defendants' websites the commercials and advertisements. While two commercials have been relocated, all of the commercials removed, as of the date of this Amended Complaint are still on-line and viewable, and the Defendants have refused to remove the commercials or otherwise correct the advertisement.

**ANSWER:** Quiznos admits that it received a November 1, 2006 letter from counsel for Subway demanding that Quiznos remove from the Contest website all sample videos and contestant-submitted videos. Quiznos otherwise denies the remaining allegations in Paragraph 31.

32. The advertising statements encouraged and promoted by the Defendants are false and misleading in that, *inter alia,* (1) the contest advertises itself as a meat vs. no-meat comparison, thereby claiming directly and/or indirectly, that the Plaintiff's product has little or no meat in it; (2) the Defendant Quiznos has claimed, directly and indirectly, that its product is superior to the Plaintiff's product when the two products are materially different; (3) the Contest solicited video entries and thereafter published these videos with "meat-no-meat" advertising explicitly or implicitly depicting the Subway product as having no meat in it; and (4) the Defendant Quiznos continued to compare its product to a product which Plaintiff no longer advertises and offers for sale.

**ANSWER:** Quiznos denies the allegations in Paragraph 32.

33. Thereafter, and continuing through December 8, 2006, videos were submitted and posted on iFilm.com which compared Quiznos to Subway®. A number of these videos contain literally false statements of images about Subway®. Others depict Subway® in a disparaging manner. Although Plaintiff indicated its objection to these videos they remained on the iFilm website for a significant period of time following the end of the contest and the selection of the winner.

**ANSWER:** Quiznos admits that contestant-submitted videos were posted on the Contest website through December 8, 2006. Quiznos otherwise denies the remaining allegations in Paragraph 33.

34. The Contest Rules, the promotion of the contest on the Quiznos meatnomeat.com and iFilm websites, and the use of the videos were all part of an organized campaign to penetrate the market in which Quiznos and Subway® compete.

**ANSWER:** Quiznos denies the allegations in Paragraph 34.

35. The Defendants' false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwiches, and not the Subway® sandwiches, based upon those representations and advertising.

**ANSWER:** Quiznos denies the allegations in Paragraph 35.

36. Defendants have, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq.*

**ANSWER:** Quiznos denies the allegations in Paragraph 36.

37. Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

**ANSWER:** Quiznos denies the allegations in Paragraph 37.

38. The Plaintiff has sustained damages as a result of the Defendants' wrongful conduct.

**ANSWER:** The allegation in Paragraph 38 purports to state a legal conclusion to which no response is required. To the extent a response is required, Quiznos denies the allegation in Paragraph 38.

## COUNT FIVE: VIOLATION OF THE LANHAM ACT

1. Paragraph 1 through 23 of Count One are incorporated hereto and made Paragraphs 1 through 23 of Count Five.

**ANSWER:** Quiznos incorporates by reference its answers to the allegations in Paragraphs 1 through 23 of Count One as if fully set forth herein.

24. In or about January 14, 2007, the Defendant Quiznos began running, and continues to run, a nationwide television advertisement campaign and nationally disseminated a 30-second commercial directly comparing the Defendant's new "Ultimate Italian" sandwich to the Subway® Italian BMT® sandwich. The commercial also appeared on the Defendant Quiznos' website www.quiznos.com.

**ANSWER:** Quiznos admits that on or about January 14, 2007 it launched a national television advertising campaign to promote the Ultimate Italian sandwich. Quiznos also admits that the campaign included a commercial depicting real consumers being asked to look at the Ultimate Italian sandwich and the Subway Italian BMT sandwich and decide which sandwich they would choose. Quiznos further admits that the commercial appeared on Quiznos' website at: www.quiznos.com. Quiznos otherwise denies the remaining allegations in Paragraph 24.

25. In this commercial advertisement, the Defendant Quiznos identified the Subway® Italian BMT® by name and depicted on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos." The sandwiches were filmed on an angle. Thereafter, several "men on the street" were filmed describing and directly comparing the two products that are on the tray. During the commercial, the Defendant Quiznos depicted the Subway® Italian BMT® sandwich as having less meat than the Defendant's product. In one vignette a man is heard saying "If I ran out of gas in front of a Subway I would walk ten miles to get the Quiznos sandwich." In another vignette two men are looking at the Subway® sandwich; one says, "I don't see any meat." The commercial also stated that the Defendant's sandwich contains a "double portion" of meat. The commercial also states that the Quiznos Ultimate Italian sandwich has 2x the meat, but does not state of what it is 2x the meat.

**ANSWER:** Quiznos admits that the commercial advertisement referenced in Paragraph 25 identifies the Subway Italian BMT sandwich by name and depicts on a tray two sandwiches, one labeled "Subway" and the other labeled "Quiznos." Quiznos admits that the commercial depicts consumers comparing the two sandwiches. Quiznos also admits that the commercial states that the Ultimate Italian sandwich contains a "double portion" of meat. Quiznos further admits that the commercial indicates that the Ultimate Italian sandwich has "2x the meat" of the Subway Italian BMT sandwich and thus depicts the Subway Italian BMT sandwich as having less meat than the Ultimate Italian sandwich. Quiznos otherwise denies the remaining allegations in Paragraph 25.

26. In fact, the Defendant Quiznos' Ultimate Italian sandwich is sold at a higher price than the Subway® product to which it was compared. There was no disclosure in the commercial of the price of the two products nor any comparison which discloses that the Defendant Quiznos' product is priced higher.

**ANSWER:** Quiznos admits that Quiznos' Ultimate Italian sandwich was sold at a higher price than the Subway sandwich to which it was compared in the commercial advertisement referenced in Paragraph 26. Quiznos further admits that the commercial does not mention the prices of the Ultimate Italian sandwich or the Subway sandwich to which it was compared. Quiznos otherwise denies the remaining allegations in Paragraph 26.

27. Furthermore, there was no mention in the commercial that a consumer of the Subway® Italian BMT® can in fact upgrade the regular Subway® Italian BMT sandwich to include a double portion of the meat. The commercial also failed to disclose that Quiznos offers a "Classic Italian" sandwich with less meat than the Ultimate Italian sandwich, and which more closely compares to the Subway® Italian BMT® sandwich.

**ANSWER:** Quiznos admits that there was no mention in the commercial that a consumer of the Subway® Italian BMT can upgrade the regular Subway® Italian BMT sandwich to include a double portion of meat. Quiznos also admits that the commercial did not disclose that Quiznos also offers a "Classic Italian" sandwich. Quiznos otherwise denies the remaining allegations in Paragraph 27.

28. In addition, the commercial depicted a Subway® Italian BMT® sandwich that appeared to be previously wrapped and compared it to the Defendant's sandwich which, upon information and belief, appeared to have been specially prepared for the commercial filming. In viewing the Quiznos website information and its menu, it states that the new Ultimate Italian has a double portion of the meat.

**ANSWER:** Quiznos denies the allegations in Paragraph 28.

29. The Plaintiff objected to the Defendant's commercial advertisement and its false and misleading comparisons, and demanded the commercial be pulled from the air and the Defendant's website. The Defendant refused to remove the commercial or otherwise correct the advertisement.

**ANSWER:** Quiznos admits that counsel for Subway (i) demanded that Quiznos cease running the "Quiznos Ultimate Italian TV Ad," and (ii) demanded that Quiznos remove the aforementioned advertisement from its website. Quiznos otherwise denies the remaining allegations in Paragraph 29.

30. The statements made in the Defendant's advertising are false and misleading in that, *inter alia*, (1) the Subway® Italian BMT® sandwich is not offered as the same product as that to which it is directly compared; (2) the Defendant did not disclose the differences in the two products and made no effort to compare and disclose the prices of the two products or the nutritional components of the two products being compared; (3) the Defendant claimed, directly and indirectly, that the Plaintiff's product has little or no meat in it; (4) the Defendant claimed, directly and indirectly, that its product is superior to Plaintiff's product when the two products are materially different; (5) the Defendant's commercial falsely depicts the appearance of the products; (6) the Defendant explicitly or implicitly claimed the Defendant's product is superior

14

to the Plaintiff's product although they are different in size and price; (7) the Defendant has claimed the product contains 2x the meat, but Defendant has not specified of what the product contains 2x the meat.

**ANSWER:** Quiznos denies the allegations in Paragraph 30.

31. The Defendant Quiznos' false and deceptive representations and advertising have caused confusion among consumers or are likely to influence consumers to purchase the Quiznos sandwich, and not the Subway® sandwich, based upon those representations and advertising.

**ANSWER:** Quiznos denies the allegations in Paragraph 31.

32. Defendant Quiznos has, by its conduct set forth above, engaged in false and misleading advertising in violation of 15. U.S.C. §1125 *et seq*.

**ANSWER:** Quiznos denies the allegations in Paragraph 32.

33. Such actions and conduct have caused and continue to cause irreparable damage to the Plaintiff for which it has no adequate remedy at law.

**ANSWER:** Quiznos denies the allegations in Paragraph 33.

34. Since Defendant Quiznos began airing its comparison commercial sales at Subway® restaurants have measurably declined. The Plaintiff has sustained damages as a result of the Defendants wrongful conduct.

**ANSWER:** Quiznos lacks sufficient knowledge or information to admit or deny that sales at Subway® restaurants have measurably declined since Quiznos began airing the commercial referenced in Paragraph 34, and therefore denies that allegation. Quiznos also denies the remaining allegations in Paragraph 34.

**COUNT SIX: CONNECTICUT UNFAIR TRADE PRACTICES ACT**

1. Paragraph 1 through 31 of Count Five are incorporated hereto and made Paragraphs 1 through 31 of Count Six.

**ANSWER:** Quiznos incorporates by reference its answers to the allegations in Paragraphs 1 through 31 of Count Five as if fully set forth herein.

32. Defendant has undertaken unfair methods of competition and unfair or deceptive acts and practices in violation of Conn. Gen. Stat. §42-110b *et seq*. with respect to its advertising of its new Ultimate Italian sandwich.

15

ANSWER: Quiznos denies the allegations in Paragraph 32.

33. Defendant's unfair methods of competition and unfair or deceptive acts and practices were willful and malicious and/or were performed by defendant with reckless disregard.

ANSWER: Quiznos denies the allegations in Paragraph 33.

34. Unless the Defendant's unfair methods of competition are enjoined the Plaintiff will suffer substantial and irreparable harm in that it will lose sales of these and other products, its reputation in the industry will be damaged and impaired and the Plaintiff's profitability will be severed impaired.

ANSWER: Quiznos denies the allegations in Paragraph 34.

35. Plaintiff has no adequate remedy at law with respect to the Defendant's unfair methods of competition and unfair and deceptive acts and practices.

ANSWER: The allegation in Paragraph 35 purports to state a legal conclusion to which no response is required. To the extent a response is required, Quiznos denies the allegation in Paragraph 35.

36. As a further result of Defendant's conduct, the Plaintiff has sustained damages.

ANSWER: Quiznos denies the allegations in Paragraph 36.

**COUNT SEVEN: COMMERCIAL DISPARAGEMENT**

1. Paragraph 1 through 31 of Count Five are incorporated hereto and made Paragraphs 1 through 31 of Count Seven.

ANSWER: Quiznos incorporates by reference its answers to the allegations in Paragraphs 1 through 31 of Count Five as if fully set forth herein.

32. The Defendant's false statements and communications made in its commercials and advertisements about the Plaintiff's Italian BMT sandwich to the public were reasonably understood to impugn the quality and performance of Plaintiff's product by asserting that the "on the street" favorable comparison show the superiority of Defendant's product to Plaintiff's product.

ANSWER: Quiznos denies the allegations in Paragraph 32.

33. The Defendant's advertising comparing its sandwich to the Plaintiff's sandwich are false or misleading. The Defendant intended and explicitly recognized or implicitly should have recognized, that these false or misleading statements would harm the Plaintiff's pecuniary interests.

**ANSWER:** Quiznos denies the allegations in Paragraph 33.

34. The Defendant's advertising is not privileged.

**ANSWER:** The allegation in Paragraph 34 purports to state a legal conclusion to which no response is required. To the extent a response is required, Quiznos denies the allegation in Paragraph 34.

35. Unless Defendant is enjoined from continued publication, the Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

**ANSWER:** Quiznos denies the allegation in Paragraph 35.

36. As a direct and proximate result of this advertising Plaintiff has sustained damages.

**ANSWER:** Quiznos denies the allegation in Paragraph 36.

## AFFIRMATIVE DEFENSES

In further answer to the Complaint, and by way of defense, Quiznos states as follows:

**First Affirmative Defense**

The Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

Quiznos is, in whole or in part, immune to liability pursuant to the Communications Decency Act.

Quiznos hereby gives notice that it intends to rely upon any other defense that may become available or appear during the discovery proceedings in this case and hereby reserves its right to amend its answer to assert such defenses.

WHEREFORE, Quiznos respectfully requests that the Court dismiss the Complaint and all purported causes of action set forth therein with prejudice, and award Quiznos its costs and reasonable attorneys' fees to the extent allowed under law.


Dated: February 20, 2008                              Respectfully submitted,

                                                      QIP HOLDER LLC

                                                      By: _____/s/_____
                                                      James C. Riley (ct00526)
                                                      Whitman Breed Abbott & Morgan LLC
                                                      500 West Putnam Avenue
                                                      Greenwich, CT 06830
                                                      Tel: (203) 869-3800

                                                      -and-

                                                      Ronald Y. Rothstein (phv0719)
                                                      Marlon E. Lutfiyya (phv01446)
                                                      Winston & Strawn
                                                      35 West Wacker Drive
                                                      Chicago, IL 60601
                                                      Tel: (312) 558-5600

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 20, 2008 a true and correct copy of the foregoing DEFENDANT QIP HOLDER LLC'S ANSWER TO PLAINTIFF'S SEVENTH AMENDED COMPLAINT was filed electronically by using the CM/ECF system, which will send a notice of electronic filing to the following:

>Jeffrey J. Mirman
>Lisa Zaccardelli
>Levy & Droney, P.C.
>74 Batterson Park Rd., P.O. Box 887
>Farmington, CT 06034-0887
>*Attorneys for Plaintiff*
>
>James C. Riley
>Whitman Breed Abbott & Morgan LLC
>500 West Putnam Avenue
>Greenwich, CT 06830
>*Attorney for Defendants*

_____/s/_____
Marlon E. Lutfiyya (phv01446)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-7445
(312) 558-5700 (facsimile)
mlutfiyya@winston.com