FILED
2009 FEB 26  P 3: 53
US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOCTOR'S ASSOCIATES, INC.
    Plaintiff

vs.

QIP HOLDER LLC and IFILM
    Defendant.

CIVIL ACTION NO.:
3:06CV01710 (VLB)

FEBRUARY 26, 2009

# REPORT OF SPECIAL MASTER ON THE CONTESTED ASSERTIONS OF PRIVILEGE AND OTHER RELATED ISSUES RAISED BY THE PLAINTIFF'S OBJECTION TO THE DEFENDANT'S DESIGNATIONS OF DOCUMENTS PROTECTED BY THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGE DATED MAY 21, 2008

## Recommended Findings and Order

The Plaintiff, Doctor's Associates, Inc. (hereinafter "Subway") has objected to the Defendants, QIP Holder LLC and IFilm's (hereinafter "Quiznos and/or IFilm") refusal to disclose most of the documents withheld as privileged and described in Quiznos's 35-page privilege log dated October 30, 2007.[1]  The Special Master takes this objection to be, in effect, a Motion to Compel because at the end of the 5/21/08 objection, the plaintiff requested an order that these documents be produced.  The Court referred this matter to the Special Master on November 10, 2008 (doc. 155).  For the reasons

---

[1] There were 343 contested documents claimed in the privilege log and some contained several pages. In addition, redactions of 26 documents were sent on January 9, 2009. The master has performed an "in camera" review of these documents.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

generally stated herein, the Master recommends that the Plaintiff's Motion to Compel Disclosure be granted in part and denied in part. In addition, the Master recommends a redistribution of his fee and costs. Also, the Master recommends that if any party wishes to file an objection to this report, that objection be filed within twenty (20) days of the date this report is filed in Court.

Background

Subway has brought an action against Quiznos and IFilm alleging a violation of the Lanham Act, a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), and commercial disparagement. The allegations are based on Subway's claim that the two defendants, jointly and severally, created and distributed false and misleading information to the public comparing Subway's cheesesteak sandwich with Quiznos's prime rib cheesesteak sandwich and Subway's Italian BMT sandwich with Quiznos's blackened Cajun steak sandwich and/or Quiznos's steak and cheese sandwich.

All of the 343 contested documents described in Quiznos's privilege log[2] have been withheld based on the attorney-client privilege, the work product doctrine, the common interest doctrine, or a combination of these protections. There are basically two issues here:

    1.    Is the document covered by any privilege to begin with?

---

[2] Although there were 343 documents, the log for e-mail strings only lists the last document in the string which is not generally considered adequate as will be discussed hereinafter.

- 2 -



One Goodwin Square  
225 Asylum Street  
Hartford, CT 06103

HALLORAN  
&SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

2.  If so, has the privilege been waived?

There is a Confidentiality Order in this case and, therefore, this report must be general in nature. The Master may file a more detailed report of his findings under seal (and in accordance with the agreement of the parties) to aid the Court in its review of the Master's findings of law pursuant to paragraph 5 of the Appointing Order if there is an objection to this report.

Discussion

The attorney-client privilege is based on the following elements:

1.  It involves a communication between a lawyer (or his subordinate) and a client or prospective client. That is: a communication between privileged persons.

2.  In connection with this communication, the lawyer must be acting as a lawyer and the communication must relate to a fact which the lawyer learned from his client, without the presence of strangers. In other words, the communication must have been made in confidence with the expectation that it would be treated as confidential. If it is not confidential, the privilege is usually considered waived.

3.  The communication was for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding. Kingsway

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, et al., 2008 U.S. Dist. LEXIS 77018 (S.D.N.Y. 2008) at p. 7; Bank Brussels Lambert, et al. v. Credit Lyonnais (Suisse) S.A., et al., 160 F.R.D. 437, 441 (S.D.N.Y. 1995); also see, United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358-359 (D. Mass. 1950)).

The work product doctrine is partially contained in Rule 26(b)(3) of the Federal Rules of Civil Procedure, and is also discussed in Hickman v. Taylor, et al., 329 U.S. 495 (1947). It protects material prepared in anticipation of litigation. It does not protect facts. LaGace v. New England Central Railroad, 2007 U.S. Dist. LEXIS 72540 (2007). Also see, "The Work Product Doctrine", 68 Cornell L. Rev., 760 (1983). The work product doctrine covers the attorney's opinions and legal theories not based on facts derived in confidence from the client. See SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 523 (D. Conn. 1976). The work product doctrine can be challenged based on substantial need. See U.S. v. Nobles, 422 U.S. 225, 238, 239 (1975). That challenge has not been made.

The common interest privilege is generally considered to be a limited exception to the third party disclosure waiver principle of the attorney-client privilege. It appears most clearly in cases of co-defendants. It also provides that "...counsel may...share work product...with those having similar interests in fully preparing litigation against a common adversary." In re Crazy Eddie Sec. Litig., 131 F.R.D. 374, 379 (E.D.N.Y. 1990). Also see Kingsway Financial Services, Inc., *supra* at p. 11. The common interest rule, or privilege, is an exception to waiver based on the theory that when two or

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

more parties, with the same legal interest, in a litigated or non-litigated matter, are represented by the same lawyer or separate lawyers, and they agree to exchange information pursuant to that common interest agreement (and in confidence) there is no waiver. Walsh v. Northrup Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996). Often, the rule comes into play when the clients have agreed to share a single attorney. See, Kingsway Financial Services, Inc., *supra*; United States v. United Techs. Corp., 979 F.Supp. 108, 111 (D. Conn. 1997); In re application of the FTC, 2001 U.S. Dist. LEXIS 5059; 50 Fed. R. Serv. 3d (Callaghan) (S.D.N.Y. 2001). Litigation does not need to be pending at the time of the communication under the common interest rule and the decision concerning whether the rule applies is based on the relationship, and intent of the parties, at the time of the communication. Kingsway Financial Services, Inc. *supra* at p. 8 citing Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles and Kaufman, LLP, 2006 U.S. Dist. LEXIS 55326 at p. 15 (E.D.N.Y. 2006).

So the common interest test is:

1.  Have the parties under consideration agreed to share an attorney or attorneys in pursuing a common legal interest at the time of the communication?

2.  Was the confidential communication given under circumstances where the two parties actually did have a common legal interest as opposed to commercial interests. It is not enough that each party shared a common concern about the threat of litigation. Bank Brussels, *supra* at 447; Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd.,

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

211 F.Supp. 2d 493, 497 (S.D.N.Y. 2002); Walsh v. Northrop Grumman Corp., *supra* at 19.

3. Was there an otherwise confidential, privileged communication passing from one party to another party concerning the common interest, and did the client reasonably understand that the communication was given in confidence? U.S. v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989). An attorney does not need to be directly involved in the communication if the clients are sharing information that would be privilege. As the court pointed out in Gucci America, Inc. v. Jennifer Gucci, et al., 2008 U.S. Dist. LEXIS 101760 (S.D.N.Y. 2008):

> If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives the communication. For example, if an attorney provides legal advice to a client – recommending that defendant move for summary judgment, say – the client can repeat the advice to a co-defendant outside the presence of any attorney without causing the privilege to be waived. Id. at p. 1.
>
> The mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest between the parties . . . *The existence of a "legal" – rather than a commercial – venture, however, is a critical component of the common interest doctrine. Here, the only apparent "legal"*

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*aspect to the venture was a desire that the transaction be legally appropriate. It is of no moment that the parties may have been developing a business deal that included as a component the desire to avoid litigation . . . such a desire "does not transform their common interest and enterprise into a legal, as opposed to commercial, matter."*

4.  Have the parties demonstrated actual cooperation toward a common legal interest? "What is important is not whether the parties theoretically share similar legal interests but, rather, whether they demonstrate actual cooperation toward a common legal goal." <u>The North River Ins. Co. v. Columbia Cas. Co.</u>, 1995 U.S. Dist. LEXIS 53 2518 (S.D.N.Y. 1995).

The issues in this case do not center around the general law referred to above, but to the facts and circumstances surrounding each document and the intent of the parties involved in the alleged common legal interest (assuming there is a privilege to begin with). The burden of proof is on the party attempting to establish the protection, namely Quiznos and IFilm. <u>United States v. Schwimmer</u>, *supra* at 243.

Quiznos and IFilm have provided a long list of well over 100 people involved in the communications being withheld as privileged. They are employed by many different entities. Some entities are parent companies and some are subsidiaries of other companies. Some people are lawyers. Some of these lawyers are in-house and some are outside counsel. The relationships between some of the entities is unclear, and it is

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

also unclear whether a particular client intended to share someone else's lawyer under the circumstances.  In addition, many of the communications are purely for business purposes, while others are primarily for business purposes.  Since each of these protections claimed by Quiznos and IFilm are contrary to the theory that the adversary process is designed to search out the truth, they must be strictly construed because secrecy is not favored.  Full disclosure is favored.  8 *Wigmore*, Evidence (3d ed.) Section 2192.

The following entities appear to be involved in some of the withheld documents in addition to Quiznos:

IFilm (a defendant and subsidiary of Viacom and hired by Oglivey to host a website for a contest which was part of Oglivey's advertising campaign.)

Oglivey & Mather (an advertising agency hired by Quiznos to develop this advertising campaign.)

Viacom (the parent company of IFilm, MTV, and VH1)

MTV Networks (a subsidiary of Viacom and hired by IFilm.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

VH1 (a subsidiary of Viacom. They were part of the Viacom "family" of companies and hired by IFilm to run commercials for the contest comparing the products in question by the public.)

Fultz & Associates (an advertising agency hired by Quiznos on this same project. They worked with Oglivey.)

Phd. N.Y. (an independent media buying company. They buy time at the networks to run the advertisements.)

Davis & Gilbert, Esq. (attorneys for Oglivey to make sure the proposed advertisements conformed to TV networks standards.)

Holland & Hart, Esq. (attorneys for Quiznos to review the promotional advertising.)

Winston & Strawn (trial attorneys for Quiznos.)

Cervantes Capital (they are an owner of Quiznos.)

Restaurant Marketing Group (hired by Quiznos to do meat analysis for this advertising campaign.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Guideline (hired by Winston & Strawn and attorney B. Johnson (Quiznos) to conduct a meat and weight analysis.)

Subway has challenged 343 of the documents being withheld by Quiznos and IFilm in their privilege log. (The log originally contained 614 documents.) Some of the issues have been resolved between the parties. The parties agreed on January 8, 2009 that there is no challenge (based on an agreed common interest) to intra-company communications between MTV, VH1, and IFilm. What is being challenged, as not part of a common interest, are communications by and between separate corporate entities such as Quiznos and MTV or Quiznos and Oglivey. Also, there is no agreement on the status of the relationship between Cervantes and Quiznos for purposes of the common interest doctrine. Just because there is an agreed common interest, however, does not make a communication or document privileged. That doctrine only eliminates waiver as discussed above.

Rule 26(b)(5) of the F.R.C.P. set the standards required for a privilege log. The log [or index] of documents withheld must, "(a)s to each document, . . . set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." Golden Trade, S.rL. v. Lee Apparel Co., et al., 1992 U.S. Dist. LEXIS 17739 (S.D.N.Y. 1992).

The privilege log itself does not meet the standards of Rule 26(b)(5). See, Golden Trade, SrL v. Lee Apparel Co., et al.,1992 U.S. LEXIS 17739 (S.D.N.Y. 1992),

One Goodwin Square
225 Asylum Street
Hartford, CT 06103
HALLORAN
&SAGE LLP
Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and cases cited therein at p. 4.  There are no affidavits from any defense witnesses, nor was any testimony submitted by either party.  The list of people submitted by Quiznos leaves some questions unanswered.  There are many organizations here, and the interrelationship of those organizations and the people within those organizations is sometimes unclear.  For this reason, the Special Master gave Quiznos the opportunity for an *in camera* evidentiary hearing (on 1/7/09) to present confidential testimony and evidence concerning withheld documents.  The purpose was to determine, factually, whether or not Quiznos and IFilm have carried their burden of proof in establishing the privileged status of each withheld document.  During the 1/7/09 hearing, Quiznos and IFilm presented no witnesses and no confidential information.  The transcript (which is not confidential) is being submitted with this report.  There was a further hearing on January 28, 2009 with all parties (transcript attached).

There is little question on the law.  To the extent that there is a dispute between the parties on the law, it is whether or not there is a waiver of the privilege where there is a communication between a principal and agent, assuming there was a privilege in the first place.

The defendants' main case of no waiver based on agency is <u>Geer v. Gilman Corp.</u>, 2007 U.S. Dist., LEXIS 38852 (D. Conn. Feb. 12, 2007).  The case, however, is distinguishable on its facts.  In <u>Geer</u>, the plaintiff used her fiancé's computer to send e-mails to her attorney in an employment discrimination case.  Her fiancé (Bourne) also read some of the e-mails and aided her in administrative matters.  The defendant

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

moved to compel the disclosure of those documents based on waiver.  Magistrate Judge Margolis held that there was no waiver based on the following criteria and facts:

1. The plaintiff and Bourne submitted affidavits establishing certain facts upon which the Court relied.  (There are no affidavits in this case.)

2. Bourne and the plaintiff had a very close relationship.  (The master cannot reach this conclusion as there are no affidavits and no testimony on this point.)

3. The plaintiff took affirmative steps to maintain the confidentiality of the attorney-client communications.  (The master cannot reach this conclusion as there are no affidavits and no testimony on this point.)

4. The communications were not primarily business in nature.  (This is not so on the face of many of the documents in this case.)

5. The documents seen by Bourne were not a significant part of the communications between the plaintiff and her counsel.  (This cannot be factually determined in this case.)

6. Bourne was merely a "conduit" for plaintiff's communications with her attorney.  (This does not appear to be the case here.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

7.  It was logical and reasonable for the plaintiff to communicate with her attorney in this manner. The Court cites <u>Curto v. Medical World Communs. Inc., et al.</u>, 2006 U.S. Dist. LEXIS 29387 (E.D. N.Y. 2006). (This is difficult to determine.)

Therefore, <u>Geer</u> is not controlling on this case from a factual standpoint. Meer agency, even with proof, is not alone sufficient to prevent waiver.

The defendants also cite <u>Deitter v. Deitter</u>, 54 Conn. App. 481; 737 A2d 926, 940-41 (Conn. App. Ct. 1999) for the proposition that the presence of an accountant hired by the plaintiff's corporation does not constitute waiver. The Court said that under the circumstances of the <u>Deitter</u> case, that was true because the accountant "...was necessary to assist the attorneys in understanding the financial information the plaintiff conveyed to the attorneys." (<u>Id</u>. at p. 941) that is consistent with Magistrate Judge Margolis's opinion in <u>Geer</u> (*supra*), and with the <u>Schwimmer</u> case, but it has no application to this case because there is no proof here that the attorneys were relying on any of the other communicants to translate or interpret information given to the attorney by the client. Rather, the attorneys appear to have sought out others for information they needed (in some cases) to avoid litigation and in some cases to render primarily business advice. The other parties supplying factual information were not experts and were not there to translate or interpret information given to the lawyers.

- 13 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

That point is explained in another case cited by the defendant, namely, U.S. v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999).

On the work product doctrine, the defendants claim litigation was anticipated right from the beginning of this advertising campaign because the defendants knew they might be sued at that time. They did not, however, receive a letter from Subway until about September 22, 2006 and the Master finds that that is when litigation was reasonably anticipated.

Factually, the Master finds the following:

1.   Certain documents have been found to fall within the attorney-client privilege. Others do not because one or more of the following facts are found:[3]

    a.   The document focuses primarily on business decisions or on ways to possibly avoid litigation.

    b.   The document does not reveal facts conveyed to an attorney in confidence for the purpose of seeking legal advice.

---

[3] Any document listed on the Privilege Log, but not listed by me in Appendix A, is to be produced in its entirety (e.g., document no. 272). It would be impractical to analyze each document in this opinion because of the huge number of documents. It would also be impractical for the Master to redact a document which was not redacted by the party claiming the privilege. In addition, the Master has not separated attorney-client privilege from the work product doctrine privilege as some documents were found to contain both. This could be done, however, if requested.

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

c. The document was not made in confidence.

d. The attorney-client privilege has been waived and Quiznos has not established that the common interest doctrine applies to one or more of the parties participating in the communication. There is no written common interest or joint defense agreement between any of the parties. If a common interest is found, it must be based upon an oral agreement of the parties. No evidence along these lines was presented. There were statements made by the attorney for the defendants, but these were his conclusions.

e. The burden of proof has not been met by Quiznos or IFilm or both.

f. The privilege log is incomplete. Many of the documents are e-mail strings in which only the last e-mail is listed. This is not adequate because each message in an e-mail string is a separate and unique document. <u>Rhoads Industries, Inc. v. Building Materials Corp. of America, et al.</u>, 2008 U.S. Dist. LEXIS 96404 (E.D.PA. 2008). In addition, it would be impossible for the party seeking discovery to challenge a communication or document that he does not know exists.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

- 15 -
HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

2. Certain documents are found to fall under the work product doctrine. Others do not because one or more of the following facts are found:

a. Many of these documents were simply e-mail correspondence between employees of various companies devising an advertising program for Quiznos. The discussions were primarily concerned with that advertising campaign and were business in nature. Many such communications would have been made even without the lawyers' involvement. While attorneys were copied on some of the documents, and on other occasions attorneys even wrote the documents and e-mails, they appear to have been created in the ordinary course of business and primarily focus on business purposes. There was no evidence presented. The log of e-mail strings is incomplete as referred to above.

b. The document was not made in anticipation of litigation.

c. The document was not kept confidential and was not part of the normal investigation duties of an attorney.

d. The burden of establishing the work produce protection has not been met.

All documents found privileged are described in Appendix A.

- 16 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

I recommend that the Court order all of the withheld documents produced within twenty (20) days of this report, except those documents referred to in Appendix A.

Submitted by,

George D. Royster
Special Master

1367302v.1
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

- 17 -

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

# APPENDIX A
## Documents Found to be Privileged or Partially Privileged

172 (the attached draft letter only)
241
246
247
248
262
274
275
276
277
278
285
286
287
305
309 (only ¶1 of 11/2/06 Heidelberger to Powers e-mail is privileged)
313
316 (disclose as redacted 1/9/09)
339 (    "        "        "        "    )
343 (    "        "        "        "    )
349 (disclose as originally redacted)
350 (disclose to conform with my ruling on 349.  Also, 428, 431, 441, 442 and 450 need to conform to my ruling also)
355 (disclose as originally redacted)
356 (disclose as redacted 1/9/09)
357 (    "        "        "        "    )
358 (    "        "        "        "    )
360 (    "        "        "        "    )
361 (    "        "        "        "    )
368 (disclose as originally redacted and conform numbers 367, 370, 371, 373, 375 and 376 to conform to my ruling)
378
379
415 (disclose as redacted 1/9/09 and conform 416 and 417 to conform to my ruling)
421
422
424
428 (disclose as redacted 1/9/09)
429 (only the two 11/16/06 e-mails from Molko)
430 (from the Molko e-mail 11/16/06 at 7:56 and e-mails earlier in time than that)
431 (disclose as redacted 1/9/09)
432
434 (only the e-mail of Johnson dated 11/17/06 at 10:44 a.m.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

436 ( "        "        "        "        "        )
438
439 (conform to 434 ruling.  Only the 11/17/06 Johnson email is found privileged)
440
441 (disclose as redacted 1/9/09)
442 (      "        "        "        "     )
450 (disclose as originally redacted)
451 (      "        "        "        "     )
460 (only the e-mail of Heidelberger of 11/29/06 at 4:17 p.m.)
481 (disclose as redacted 1/9/09)
497 (only email of 12/12/06 at 10:24 a.m. by Powers)
538 (but only last e-mail from Ettenberg of 1/12/07 at 9:13 p.m.)
580 (except middle ¶ of Boyce e-mail sent 1/19/07 at 5:30 p.m.)
581
582
584 (same ruling as 580)
585 (   "        "        "        "   )
587 (disclose as redacted 1/9/09)
591

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105