UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOCTOR'S ASSOCIATES, INC., : <br>     Plaintiff, : <br> : <br> v. : <br>      : <br> QIP HOLDERS LLC et al., : <br>     Defendants. : <br>      : | No. 3:06CV01710(VLB) <br><br> June 15, 2009 |

**ORDER ON OUTSTANDING DISCOVERY MOTIONS [Docs. ## 157, 158, 163]**

**Master's Report and Recommendations**

On December 28, 2007, the parties first raised the instant privilege dispute. [Doc. #109] The Court reviewed the attached privilege log, and concluded that it was impossible to discern whether privilege existed based on the vague identifications of the recipients of the disputed documents and conclusory descriptions of the documents themselves. The Court therefore referred the parties to Magistrate Judge Thomas Smith for a discovery conference, and while the parties made some progress, Judge Smith was unable to resolve the privilege dispute. Judge Smith warned the defendants, who asserted the privilege, that he could not conclude that any of the documents were privileged if they relied solely on the privilege log to support their claims and suggested appointing a special master to review the documents in camera. [Doc. # 119] On April 23, 2008, the Court held a telephonic conference regarding the privilege dispute and ordered the parties to brief the issue. After reviewing the briefing, the Court determined

1

that the vague and conclusory nature of the privilege log, including patent waivers of any privilege which may have existed, necessitated an in camera review of the disputed documents to prevent the inadvertent disclosure of privileged documents. [Doc. #147] On October 24, 2008, QIP produced the disputed documents to the Court. The Court, having already closely reviewed the privilege log, selectively reviewed several documents from the file and concluded that they did not appear to be privileged. On November 6, 2008, the Court held a hearing to determine whether the appointment of a special master was appropriate. At the hearing, the defendant persisted in its assertion of privilege in response to the Court's skepticism. On November 10, 2008, the Court appointed attorney George Royster as a special master pursuant to Fed. R. Civ. P. 53(a)(1) to receive evidence and hear arguments concerning contested issues of privilege raised by the parties on May 21, 2008. [Doc. #155]

     Pursuant to this order, the master carried out his duties. He conducted a hearing at which the defendant declined to present any evidence and then filed a report with the Court on February 26, 2009. [Doc. #157] On March 9, 2009, the plaintiff moved to adopt and modify the findings of the master. [Doc. #158] The defendant concurrently objected to the report of the master. [Doc. #159] On March 11, 2009, the Court ordered the master to respond to those filings. On March 31, 2009, the master filed a supplemental report and response. [Doc. #164] On April 1, 2009, the Court ordered a hearing pursuant to Fed. R. Civ. P. 53(f)(1) on the report and recommendations of the special master. On April 22, 2009, the

parties appeared before the Court. The defendants objected to the report of the special master and argued that the master had not fully considered certain evidence before him, specifically the one-page affidavit of Amy Powers dated June 4, 2008, submitted in support of their original assertion of privilege. The Court noted that this affidavit was specifically discussed in the master's supplemental report, and addressed its deficiencies on the record. At that hearing, the defendant conceded that some of the documents were not privileged. In the spirit of cooperation, the Court offered the defendant yet another opportunity to submit additional evidence. The Court pointed out that extreme efforts had already been undertaken to protect the defendants' assertions of privilege, but that all of the defendants' submissions had been egregiously deficient. In granting the defendants a final chance to offer evidence to support their sweeping privilege claims, the Court ordered that:

> Such evidence should be probative of, for work product claims: 1) when litigation was reasonably anticipated, and 2) whether the withheld documents were in fact created in anticipation of litigation. For attorney-client privilege claims, probative evidence must show that the withheld documents were: 1) confidential and not distributed to persons who were not necessary for the provision of legal advice, and 2) were for the purpose of seeking legal advice or advancing a legal, and not business-related, goal. Such a burden will not be satisfied by the provision of affidavits that merely restate legal conclusions.

[Doc. #167] On May 1, 2009, the defendants submitted a second affidavit by Amy Powers dated May 1, 2009, and no other evidence to support their claims of privilege.

Pursuant to Fed. R. Civ. P. 53(f)(3) and 53(f)(4), the Court now decides, de

novo, all findings of fact of the master as well as conclusions of law pursuant to the objections filed by the parties. There were no objections filed on procedural matters.

After considering the additional affidavit submitted on May 1, 2009, the Court holds that it does not alter any of the conclusions stated in the master's report. The Court warned that the defendants' burden of proof would not likely be satisfied by "affidavits that merely restate legal conclusions." Even assuming <u>arguendo</u> that a document listed on the log was privileged, the Second Circuit has stated, "[t]he party asserting the privilege must show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents. This burden of objective proof cannot be met through conclusory ex parte affidavits." <u>In re Grand Jury Subpoenas</u>, 318 F.3d 379 (2d Cir. 2003). The mere fact that an attorney authored a document or was a recipient, along with others, is not sufficient to classify a document as privileged. <u>See, e.g., Walsh v. Northrop Grumman Corp.</u>, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) ("To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its attorneys. . . the attorney-client privilege should be strictly confined within the narrowest possible limits underlying its purpose.") The affidavit is woefully lacking in the kind of factual detail, addressed to specific documents, that would prove that the

relationship of the parties was confidential and that each non-attorney in each email chain link was necessary for the provision of legal advice.

The Court holds that the conclusions of fact and law of the special master are correct and hereby incorporates the two reports of the special master into this ruling. In addition, the Court orders that all documents found in the defendant's privilege log be disclosed, except those to which Doctor's Associates (Subway) did not contest privilege, or which the master found privileged in Appendix A of the master's report dated February 26, 2009.

The Court has previously ordered that the master's fees and expenses be divided 3/4 to the defendants and 1/4 to the plaintiff based on the findings and recommendations of the special master and the circumstances of this case and this dispute, all as summarized above, pursuant to Fed. R. Civ. P. 53(g)(3). The Court also orders that the master submit his final bill by 7/15/2009 and that those fees and expenses be paid within 30 days thereafter, but in no event later than 8/15/2009. The reapportionment of the master's fee is ordered to be adjusted between the parties themselves, but the master retains the right to recover his fee and expenses from either party or both.

### QIP Sales Data

In their motion for a discovery conference [Doc. #144], the parties indicated that one of their remaining disputes was Subway's request for QIP's sales data from 2002-2007. QIP previously sought this same information from Subway. [Doc. #109] QIP's main objection is that expert discovery had closed, and it argues that

this request came too late in the discovery process to be accommodated. It also argues that Subway does not need this data to analyze QIP's profits. As QIP once argued that Subway's sales data from 2002-2007 were necessary to analyze Subway's profits during the time period in which the commercials underlying the case ran [Doc. #109], it seems disingenuous for QIP to now argue that Subway can analyze QIP's profits with only the sales data from 2006-2007. Given the broad scope of discovery in federal court, it is reasonable that this data be disclosed.

QIP also argues that it will not have the opportunity to depose Subway's damages expert regarding a disgorgement-of-profit analysis using this cost data. If Subway's expert did not provide an opinion on a disgorgement-of-profit analysis at his deposition, this would be the proper subject of a motion in limine regarding the expert's testimony at trial, but would not bar the production of the underlying data, as discovery is ongoing.

<u>Deadlines</u>

Subway has filed a motion for an extension of the discovery deadline to review certain recently disclosed documents, including those disclosed by this order. It indicates that it must take at least three more depositions. The motion is granted. Discovery is due July 31, 2009, due to the large number of documents that will now be disclosed. Dispositive motions are due August 28, 2009. If no dispositive motions are filed, the joint trial memorandum is due September 11, 2009. However, as the parties have indicated that they intend to file dispositive motions, the Court orders

**the parties to meet and confer with each other at least 10 days before filing dispositive motions with the aim of limiting the bases on which each party moves for summary judgment and familiarizing each party with the relevant claims and defenses. The moving party must submit a statement of undisputed material facts in accordance with Local Rule 56(a). The Court will not grant unnecessary extensions of time to respond or reply to motions for summary judgment, as the Court intends to dispose of this case either through summary judgment or trial by March 1, 2010.**

                                                                                            **IT IS SO ORDERED.**

                                                                                    _____/s/_____

                                                                                       Vanessa L. Bryant
                                                                    United States District Judge

**Dated at Hartford, Connecticut: June 15, 2009.**