**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, INC. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:06-cv-1710(VLB) |
| QIP HOLDER LLC and IFILM CORP., | : | |
| Defendants. | : | December 23, 2010 |

<u>MEMORANDUM OF DECISION DENYING DEFENDANT QIP HOLDER'S
MOTION FOR COSTS AND EXPENSES INCURRED TO REBUT THE DAMAGES
ANALYSIS OF PLAINTIFF'S ORIGINAL DAMAGES EXPERT [Doc. #178]</u>

The Plaintiff, Doctor's Associates, Inc. ("Subway"), brought this case for injunctive relief and damages against the Defendants, QIP Holder LLC ("Quiznos") and Ifilm Corp., asserting claims for false and deceptive advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), along with Connecticut state law claims for commercial disparagement and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b *et seq.*.  This case arises out of a Quiznos ad campaign comparing certain Quiznos sandwiches to certain Subway sandwiches in two national television commercials and an internet based contest. Presently pending before the Court is Quiznos' motion seeking costs and expenses incurred to rebut the damages analysis of Subway's original damages expert.  For the reasons set forth below, Quiznos' motion is DENIED.  However, the Court orders that the new expert's testimony at trial will be limited to establishing the veracity and integrity of the original expert and the conclusions reached in the original expert's report.

I.  <u>Factual and Procedural Background</u>

The following facts are relevant to Quiznos' motion for costs and expenses.
On April 22, 2009, the Court conducted a hearing to address various issues related
to discovery.  During the hearing, Subway's counsel advised the Court of the
necessary withdrawal of Subway's expert witness on damages, Dr. Alan A.
Schachter, and its intention to substitute another expert for Dr. Schachter.

Dr. Schachter is a Certified Public Accountant in business valuation and is
certified by the American Institute of Certified Public Accountants and the
Association of Certified Valuation Analysis.  Pl. Ex. A, Schachter Aff., ¶ 3.  In 2003, Dr.
Schachter was hired by Willamette Management Associates ("Willamette") as a
Managing Director to supervise a new office in Westport, Connecticut.  <u>Id.</u>  ¶ 4.  In
July of 2007, representatives of Willamette signed an engagement letter with
Subway to assist as litigation consultant and potential expert in the present
litigation.  <u>Id.</u> ¶ 6.  The engagement letter, which remains in effect, did not name the
testifying expert.  <u>Id.</u>  During the period from July 2007 to July 2008, Dr. Schachter,
along with other Willamette employees, performed services on behalf of Willamette
pursuant to the engagement letter, including the preparation of an expert report on
damages.  <u>Id.</u> ¶ 7.  Dr. Schachter was disclosed to Quiznos as Subway's testifying
expert, and Subway served his expert damages report on March 26, 2008.  Quiznos'
counsel took Dr. Schachter's deposition on July 3, 2008.  <u>Id.</u> ¶ 7.  Thereafter,
Quiznos disclosed Stephen D. Silberman as an expert.  Mr. Silberman reviewed Dr.
Schachter's report and prepared a rebuttal report that was served on April 28, 2008.
Mr. Silberman was deposed by Subway's counsel in connection with his report on

2

June 17, 2008.  Quiznos contends that it expended a total of $262,948.86 to rebut Dr. Schachter's damages analysis.  See Def. Ex. F, Rothstein Aff.

During February of 2009, economic conditions resulted in the closing of Willamette's Connecticut office.  Thereafter, Willamette advised Dr. Schachter that he would have to relocate the Connecticut practice to New York.  Dr. Schachter declined for personal reasons and resigned his position with Willamette in March 2009.  Id. ¶ 8.  Around that time, Dr. Schachter was introduced to Citrin Cooperman ("Citrin"), and he engaged in discussions with Citrin regarding the possibility of joining Citrin as a partner.  Pl. Ex. B, Cooperman Aff., ¶ 3.  Citrin is the independent auditor for Subway and has served in that capacity continuously since 1996.  Id. ¶ 2.  Citrin has also prepared tax returns and performed consulting work for Subway.  Id.

During the time that Citrin was considering inviting Dr. Schachter to join as a partner, it learned that Dr. Schachter was a disclosed expert witness for Subway in the present litigation.  Id. ¶ 4.  Citrin determined that if Dr. Schachter were to join it as a partner, this could present the appearance of a conflict of interest in Dr. Schachter's work as expert witness for Subway.  Id.  For instance, Citrin concluded that Dr. Schachter's credibility to serve in that capacity could be challenged because of Dr. Schachter's financial interest in Citrin and Citrin's longstanding professional relationship with Subway.  Id.  As a result, Citrin determined it would not admit Dr. Schachter as a partner unless Dr. Schachter was removed as an expert witness in this litigation.  Id.  Dr. Schachter agreed that his joining Citrin would present a conflict of interest that could prejudice Subway's position in this case and therefore that he was ethically obligated to remove himself as an expert for Subway in order

3

to accept the position with Citrin.  Thereafter, Dr. Schachter resigned from his engagement as Subway's expert witness and joined Citrin.  Id. ¶ 15.

On April 21, 2009, counsel for Subway advised Quiznos of the conflict and disclosed its new damages expert, Robert Schweihs, also of Willamette.  On April 22, 2009, the Court conducted a hearing on several pending discovery matters, during which time Subway's counsel raised the issue concerning the substitution because of Dr. Schachter's new relationship with Citrin and the apparent conflict of interest it created.  4/22/09 Tr., pp. 60-61.  The Court acknowledged that Dr. Schachter's relationship with Citrin and the Plaintiff's relationship with Citrin could be seen as a conflict.  The Court stated that it was Dr. Schachter's "professional, ethical obligation not to represent Subway, when he is employed by an accounting firm who is obligated to be independent in its review of Subway's financials."  4/22/09 Tr. at. 62.  Therefore, the Court effectively approved the withdrawal and substitution of Mr. Schweihs.  However, Subway did not inform the Court at the time of the hearing that it had engaged Willamette, rather than Dr. Schachter himself, to provide expert services, and the Court only became aware of that fact when reviewing the parties' briefs related to the instant motion.

Subsequently, on July 28, 2009, Subway filed Mr. Schweihs' expert report.  The report utilized a damages analysis different than that used by Dr. Schachter, and concluded that Subway suffered an additional $1.7 million in damages.  Specifically, Dr. Schachter's report concluded that Subway suffered total damages of $6,489,000 as a result of Quiznos' advertisements, while Mr. Schweihs' report concluded that Subway suffered total damages of $8,200,000.

4

## II. Discussion

Quiznos asserts that it is entitled to $262,948.86 in costs and expenses incurred to rebut the conclusions in Dr. Schachter's damages report.  According to Quiznos, Subway's untimely substitution of experts renders worthless all of the time, work, and expense that Quiznos expended to rebut Dr. Schachter's opinions. Quiznos maintains that Mr. Schweihs' report differs from Dr. Schachter's report in the following specific ways:

> Mr. Schweihs' analysis  yielded a total damages amount that is 26.4 percent *more* than Dr. Schachter's analysis ($8,200,000 versus $6,489,000).

> Mr. Schweihs' damages period for the Italian BMT advertisement is seven weeks long, and begins the week the Quiznos advertisement first aired and ends when the per-store revenue returned to the expected level.  In contrast, Dr. Schachter's damages period for the same advertisement was four weeks long, beginning the week the Quiznos advertisement first aired and ending when the actual sales returned to the expected level.  Thus, Mr. Schweihs' damages period is a full three weeks (or 43 percent) longer than Dr. Schachter's damages period.

> Dr. Schachter and Mr. Schweihs used different methods to account for the "seasonality effect."

> Dr. Schachter and Mr. Schweihs used different benchmarks.   Dr. Schachter compared the prior year's same-week sales to a benchmark, which was the average weekly sales for the remainder of the same year. Dr. Schachter used the period of 2002-2003 for the Cheesesteak figures and used 2002-2006 for the Italian BMT figures.  Mr. Schweihs, on the other hand, developed a benchmark by uses [sic] average store sales per week to calculate the mean weekly sales per store for the prior 12-month period ("LTM Mean Sales").  Mr. Schweihs used the period of 2002-2006 for the Cheesesteak figures and 2004-2006 for the Italian BMT figures.

Def. Reply Mem. at 7.  Subway, on the other hand, argues that it should not be required to pay any costs or expenses incurred by Quiznos as a result of the substitution of Mr. Schweihs because "the substitution of Schweihs as [sic] the

reasons for Schachter's withdrawal were both documented and mandated by the ethical obligation of Schachter's profession." Pl. Obj. at 2.  Further, Subway argues that the method of averaging sales used by Mr. Schweihs is not substantially different than the method used by Dr. Schachter, and that "[t]he primary difference in the two reports relates to the number of weeks utilized to determine damages and the use by Schweihs of a simple average compared to Schachter's use of a weighted average." Id. at 6.  Finally, Subway asserts that the rebuttal report prepared by Mr. Silberman cannot be considered "worthless" because "the majority of the Silberman report does not address the analyses performed by Schachter, but instead considers other approaches to value." Id. at 2.

Courts considering a party's request to substitute a new expert have applied the standard for modifying a scheduling order set forth in Rule 16(b) of the Federal Rules of Civil Procedure.  See, e.g., Jung v. Neschis, No. 01 Civ. 6993 (RMB)(THK), 2007 U.S. Dist. LEXIS 97173, at *51-*52 (S.D.N.Y. Oct. 23, 2007); Sithon Maritime Co. v. Holiday Mansion, No. 96-2262-EEO, 1998 U.S. Dist. LEXIS. 11822, at *4 (D. Kan. July 30, 1998) (stating that court would not be inclined "to allow the substitution of an expert witness without substantiated, good reason having been shown for doing so").  Here, the Court's initial scheduling order required the Plaintiff to disclose it's expert reports on or before August 1, 2007, and provided that any experts disclosed by the Plaintiff would be deposed on or before September 1, 2007.  See Doc. #78. The Court subsequently granted several extensions of the scheduling order.  The most recent scheduling order pertaining to expert disclosure and discovery was entered on April 22, 2008.  See Doc. #130.  The Court's April 22, 2008 Order extended

6

the discovery schedule as to both fact and expert witnesses until July 5, 2008.  Dr. Schachter's expert report was disclosed to Quiznos on March 26, 2008, and Quiznos' counsel took his deposition on July 3, 2008.  Mr. Schweihs was not disclosed as a damages expert until April 21, 2009, outside of the effective schedule pertaining to expert disclosure and discovery.  Therefore, the Plaintiff essentially seeks an enlargement of the discovery period in order to conduct expert discovery anew.  See Jung, 2007 U.S. Dist. LEXIS 97173, at *51.

Pursuant to Rule 16(b), a scheduling order "shall not be modified except upon a showing good cause."  "A finding of good cause depends on the diligence of the moving party."  White Diamond Co. v. Castco, Inc., 436 F. Supp. 2d 615, 626 (S.D.N.Y. 2006).

Having a more complete understanding of the facts pertaining to Subway's retention of a damages expert, the Court finds that the Plaintiff has adequately demonstrated good cause to substitute another employee of Willamette for Dr. Schachter to present and defend Dr. Schacter's original expert opinion.  As outlined in detail in Section I, *supra*, Subway has provided affidavits from both Dr. Schachter and a representative from his new employer, Citrin, establishing that Dr. Schachter withdrew as an expert witness for Subway in connection with this litigation as the result of a legitimate conflict of interest.  Within two months of learning of this conflict, Subway informed both Quiznos and the Court.  Accordingly, Mr. Schweihs, who is also an employee of Willamette, may testify as to Dr. Schachter's original expert report.

Having concluded that Subway has demonstrated good cause to substitute Mr.

7

Schweihs as an expert, the Court must next determine whether Quiznos is entitled to costs and expenses it incurred to rebut the damages analysis of Dr. Schachter. Generally, in cases in which courts have awarded costs and expenses associated with the substitution of an expert, there has been some evidence of bad faith, fault, or tactical maneuvering on the part of the party making the substitution.  See, e.g., Jung, 2007 U.S. Dist. LEXIS 97173, at *44-46 (conditioning substitution of new experts on plaintiff's payment of all costs associated with rebutting original expert's opinion, as well as fees incurred in deposing original expert, where the plaintiff engaged in "dilatory and misleading" conduct, including attempting to conceal the fact that the original expert was suffering from Alzheimers, failing to disclose that the original expert's report contained several false representations and relied upon information that was not actually obtained by the expert, and producing altered copies of certain tape recordings that the expert purportedly relied upon); Gucci Am., Inc. v. Exclusive Imports, Int'l, 99 Civ. 11490, 2001 U.S. Dist. LEXIS 67, at *11-*13 (S.D.N.Y. Jan. 9, 2001) (awarding defendants fees and expenses associated with deposing original expert where the plaintiff purposefully chose an expert with limited knowledge and then withdrew that expert and substituted a new expert after the original expert's credibility was called into question at deposition).  There is no direct evidence of bad faith on Subway's part in this case, and the Court takes at face value Subway's representation that it was not attempting to engage in tactical maneuvering in order to better its position by substituting Mr. Schweihs for Dr. Schachter. Therefore, the Court declines to award Quiznos costs and expenses associated with rebutting Dr. Schachter's expert report.

8

On the other hand, although the reason for Dr. Schachter's withdrawal was not within Subway's control and there is no direct evidence that Subway substituted Mr. Schweihs in bad faith, the practical result of the substitution is to put Quiznos in a significantly worse position than it would have been otherwise, because Mr. Schweihs concluded that Subway suffered damages in an amount approximately $1.7 million higher than the amount calculated by Dr. Schachter. Moreover, at the time of the April 22, 2009 hearing in which the Court indicated that it agreed that Dr. Schachter was ethically obligated to withdraw as Subway's expert, Subway did not inform the Court that it had engaged Willamette, rather than Dr. Schachter himself, to provide expert services. Thus, the Court was unaware and did not contemplate that Willamette could simply have assigned another expert to Subway's case in order to support the conclusions reached in Dr. Schachter's original report. Instead, Subway commissioned Mr. Schweihs' preparation of an entirely new expert report using a different analysis and reaching a damages amount $1.7 million higher than that reached by Dr. Schachter. Subway has not provided any indication that Dr. Schachter's original report - which he prepared on behalf of Willamette - was inaccurate, or that he lacked integrity in any way. Accordingly, although the Court will permit the substitution of Mr. Schweihs, who is also an employee of Willamette, the scope of his testimony will be substantially limited at trial. See Cardiac Sci., Inc. v. Koninklijke Philips Elecs., N.V., No. 03-1064 (DWF/RLE), 2006 U.S. Dist. LEXIS 93833, at *11-*12 (D. Minn. Dec. 22, 2006) (permitting substitution of plaintiff's expert on the condition that the new expert "may not testify in any manner that is contrary to or inconsistent with" the original expert, in order to "minimize the inevitable

9

prejudice to [the defendant] caused by the substitution").

### III.  Conclusion

Based on the above reasoning, Quiznos' motion for costs and expenses [Doc. #178] is DENIED.  The Court declines to award Quiznos the costs and expenses it incurred to rebut Dr. Schachter's damages analysis.  The Court further orders that Subway will be permitted to substitute Mr. Schweihs as an expert.  However, Mr. Schweihs' testimony at trial will be limited to establishing the veracity and integrity of Dr. Schachter and the conclusions reached in Dr. Schachter's original expert report.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  December 23, 2009.